**CUNEO GILBERT & LADUCA, LLP**
Benjamin Elga (Bar No. 5332861)
*belga@cuneolaw.com*
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: (202) 789-3960
Facsimile: (202) 789-1813

*Attorneys for Plaintiff and the Proposed Class*
[Additional Counsel in Signature Block]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE MARINO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COACH, INC.,<br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Michelle Marino ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following based upon personal knowledge as to allegations regarding herself and on information and belief as to other allegations:

## INTRODUCTION

1.      This is a civil class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendant Coach, Inc. ("Coach" or "Defendant") arising from its deceptive and misleading labeling and marketing of merchandise it sells through its company-owned Coach outlet stores ("Coach Outlets").

2.      During the Class Period[1] (defined below), Coach intentionally portrayed false price information by misrepresenting the existence, nature, and amount of price reductions on manufactured-for-outlet products sold exclusively at Coach Outlets ("Coach Outlet Products").

3.      On the price tags of its Coach Outlet Products, Coach advertised the Manufacturer's Suggested Retail Price ("MFSRP") and then on a placard in front of the Coach Outlet Product advertised a reduced price, which was intended to portray to the consumer a deep price reduction off of the MFSRP and induce consumers to purchase the Coach Outlet Products believing they are getting a significant price reduction from the regular retail price.

4.      However, the MFSRPs used by Coach did not convey accurate information about the Coach Outlet Products and were instead a sham designed to mislead and deceive consumers.

5.      Coach led consumers to believe its MFSRPs represented authentic price information about the products they purchased. In reality, Coach manufactures the Coach Outlet Products for *exclusive sale* at its Coach Outlets and always sells these goods for the advertised reduced price, never the MFSRP. As a result, such items were never sold, never suggested to be

---

[1] The Class Period shall encompass all sales from February 12, 2012 through the date of entry of class certification (the "Class Period").

sold, or even intended to be sold at the "MFSRP" listed on its price tags. Coach Outlet Products are only sold in its outlets.

6.       Through its false and deceptive marketing, advertising and pricing scheme, Coach violated (and continues to violate) New Hampshire law. Specifically, Coach violated (and continues to violate) New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:1, *et seq*. (the "CPA"), which makes it "unlawful  for any person to use any unfair methods of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce." N.H. Rev. Stat. Ann. § 358-A:2; In particular, the CPA lists as a violation of the statute, "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."  N.H. Rev. Stat. Ann. § 358-A:2(XI).

7.       Plaintiff, individually and on behalf of all others similarly situated, seeks restitution and other equitable remedies, including an injunction under the CPA, as well as fraud and negligent misrepresentation under New York common law.

## PARTIES

8.       Plaintiff Michelle Marino is a resident of Chelmsford, Massachusetts. In reliance on Coach's false and deceptive advertising, marketing and pricing schemes, Ms. Marino purchased a Coach Outlet Product from the Coach Outlet located at the Merrimack Premium Outlets, in Merrimack, New Hampshire in approximately December 2014, and as detailed herein, she was damaged as a result thereof.

9.       Defendant Coach, Inc. is a corporation duly organized and existing under the laws of the State of Maryland, with its principal place of business at 516 West 34th Street, New York, NY, 10001.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of Massachusetts, and Defendant is a citizen of the States of Maryland and New York; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs

11.     The Southern District of New York has personal jurisdiction over Coach because Coach resides in this District.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Coach's principal place of business is found within this District, and a substantial part of the events giving rise to Plaintiff's claims arose here, including the creation of the scheme alleged in this Complaint.

## FACTUAL ALLEGATIONS

13.     Traditionally, retail outlet stores were located in remote areas and typically maintained an inventory of defective and excess merchandise. Customers often flocked to these outlets in hopes of finding steep price reductions and bargains.[2]

14.     However, in an effort to increase profits, major retailers such as Coach have, without notice to consumers, begun using company-owned "outlet" stores to sell manufactured-for-outlet products which are never intended to be sold at non-outlet stores.

15.     In New Hampshire, such "outlet" stores are located in purpose-built malls touted as "outlets," or "premium outlets." The very term "outlet" conveys to reasonable consumers that the products are comprised of merchandise formerly offered for sale at full-price retail locations.

---

[2] *See*  7 Tips for Outlet Mall Shopping, FORBES (Dec. 29, 2012),
*http://www.forbes.com/sites/investopedia/2012/12/29/7-tips-for-outlet-mall-shopping/*

The location of Coach Outlets in "outlet" malls deceives reasonable consumers into believing they are receiving true "outlet" merchandise, when they are not.

16.     Instead, retailers like Coach create the illusion of traditional outlet price reductions and bargains by offering the made-for-outlet goods at prices reduced from fabricated, arbitrary, and false MFSRPs.

17.     Coach manufactures Coach Outlet Products exclusively for outlet stores.

18.     On information and belief, items sold exclusively in Coach Outlets can be identified by the placement of the letter "F" before the product number.

19.     Media reports indicate outlet stores, such as Coach Outlets, are using false and fraudulent price comparison tactics.[3]

20.     The intentional use of false and fraudulent price comparison tactics is increasingly deceiving consumers in the market. To illustrate, on January 30, 2014, four Members of Congress demanded an FTC investigation of misleading marketing practices by outlet stores across the United States. The four Members of Congress described a pricing scheme similar to the one implemented at Coach Outlets and stated, "[i]t is a common practice at outlet stores to advertise a retail price alongside the outlet store price—even on made-for-outlet merchandise that does not sell at regular retail locations. Since the item was never sold in the regular retail store or at the retail price, the retail price is impossible to substantiate. We believe this practice may be a violation of the FTC's Guides Against Deceptive Pricing (16 CFR 233)."[4]

---

[3] Sapna Maheshwari, Consumers May Not Know They're Getting Lower-Quality Clothes at Outlet Stores (May 14, 2014), *available at* http://www.buzzfeed.com/sapna/customers-finally-aware-that-most-outlet-merchandise-is-now.
[4] Press Release, White House, Sens. & Rep. to FTC: Outlet Stores May Be Misleading Consumers (Jan. 30, 2014), *available at* http://www.whitehouse.senate.gov/news/release/sens-and-rep-to-ftc-outlet-stores-may-be-misleading-consumers.

21.     Empirical marketing studies provide an incentive for retailers to engage in this false and fraudulent behavior:

> Comparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings…[A] comparative price advertisement can be construed as deceptive if it makes any representation,… or involves any practice that may materially mislead a reasonable consumer.

Dhruv Grewal and Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?,* 11 J. PUB. POL'Y & MKTG 52, (1992). In short:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product…Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id*. at 55, 56.

22.     This is precisely the practice used by Coach in its Coach Outlets.

23.     Accordingly, the MFSRPs listed on Coach Outlet Products are fictional creations designed by Coach to portray false price reductions, enable phantom markdowns, and increase sales.

24.     Coach knows consumers are bargain-hunters and excited by the prospect of a bargain.[5] The juxtaposition of an artificial MFSRP and a reduced price on Coach Outlet Products is intentionally designed to convey to consumers that they are receiving a bargain or a "deal" on the Coach Outlet Product.  However, there is no bargain to be had. The MFSRP on Coach Outlet Products exists only to create the illusion of a bargain.

25.     The Federal Trade Commission ("FTC") explicitly describes this fictitious pricing scheme employed at Coach Outlets as deceptive:

> (a) Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally

---

[5] *See* Coach Annual Report, at 4 ("Through these outlet stores, Coach targets value-oriented customers")

sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer. A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

* * *

(i)  It bears repeating that the manufacturer, distributor or retailer must in every case act honestly and in good faith in advertising a list price, and not with the intention of establishing a basis, or creating an instrumentality, for a deceptive comparison in any local or other trade area. For instance, a manufacturer may not affix price tickets containing inflated prices as an accommodation to particular retailers who intend to use such prices as the basis for advertising fictitious price reductions.

16 C.F.R. § 233.3; *see* N.H. Rev. Stat. Ann. § 358-A:13 ("It is the intent of the legislature that in any action or prosecution under this chapter, the courts may be guided by the interpretation and construction given Section(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1), by the Federal Trade Commission and the federal courts"); 15 U.S.C. § 45(a)(1) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful").

26.     The Coach Outlet pricing scheme was prominently advertised through the pricing of all Coach Outlet Products. By way of example, illustration A below represents an advertised price for a Coach Outlet Product, and illustration B is the tag found inside the Coach Outlet Product with the alleged MFSRP:



**A**



**B**

27.     Upon information and belief, thousands of consumers were victims of Coach's deceptive, misleading and unlawful false pricing scheme and thousands more, including Plaintiff, will be deceived if the practices continue.

28.     Coach fraudulently concealed from, and intentionally failed to disclose to, Plaintiff and others similarly situated, the truth about its MFSRPs and advertised price reductions from those supposedly "suggested prices."

29.     Coach's false representations of MFSRPs and false representations of price reductions, discounts and bargains are objectively material to a reasonable consumer.

30.     Plaintiff and the members of the Class relied upon such false representations of MFSRPs and price reductions when purchasing products from a Coach Outlet. Plaintiff would not have made such purchases, or would not have paid the amount she did, but for Coach's false representations of the MFSRP of the items she purchased, especially when juxtaposed with the supposedly reduced price at which Coach offered the items for sale.

31.     Plaintiff, in short, believed the truth of the prices presented with the products she purchased at a Coach Outlet, which expressly told her that she was getting a terrific bargain on her purchases. In reality, she was not getting a bargain at all.

**A.     <u>Plaintiff's Purchases</u>**

32.     In approximately December 2014, Plaintiff entered the Coach Outlet located in Merrimack, New Hampshire. She observed some merchandise was advertised with price tags a "MFSRP" next to a significantly reduced price. She also observed that other items in the store did not make these price-reduction representations on their price tags.

33.     Plaintiff understood the items with the price reductions tags represented that she was receiving a bargain or a "deal" on the Coach Outlet Product—on sales terms more preferential or more optimal to the consumer than those offered outside the context of the outlet store.

34.     Enticed by this prospect, Plaintiff was induced to purchase a wristlet bearing Style Number F51763, with a "MFSRP" of $78, while paying approximately $40.00.

35.     Plaintiff's reliance on Coach's false price comparison advertising was reasonable. *See* Dhruv Grewal and Larry D. Compeau, 11 J. Pub. Pol'y & Mktg 52 (1992).

36.     However, Coach never intended, nor did it ever, sell the items at the represented "MFSRPs." Thus, Plaintiff was deceived by the false price comparison into making a full retail purchase with no price reduction.

37.     Plaintiff would not have purchased the Coach Outlet Products, or would not have paid the price she did, if she had known she was not truly receiving a bargain, or receiving a price reduction, as specified.

38.     Despite the "MFSRP" scheme used at Coach Outlets, Plaintiff would purchase Coach Outlet Products in the future from Coach Outlet stores and/or other retail establishments, if

Coach Outlet Product labels accurately reflect price reductions and bargains. If the Court were to issue an injunction ordering Coach to comply with New Hampshire's comparative price advertising laws, and prohibiting Coach's use of the deceptive practices discussed herein, Plaintiff would likely shop for Coach Outlet Products again in the near future at Coach Outlets.

**B.    Rule 9(b) Allegations**

39.    Federal Rule of Civil Procedure ("Rule") 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As detailed in the paragraphs above, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

40.    WHO: Coach made material misrepresentations and failed to adequately disclose material facts as detailed herein. Except as identified herein, Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those individuals at Coach who are responsible for such material misrepresentations and/or omissions.

41.    WHAT: Coach led consumers to believe its MFSRPs represented authentic price information about the Coach Outlet Products they purchased. In reality, Coach manufactures the Coach Outlet Products for *exclusive sale* at its Coach Outlets and always sells these goods for the advertised reduced price, never the MFSRP. Accordingly, the MFSRPs listed on Coach Outlet Products are fictional creations designed by Coach to portray false price reductions.

42.    WHEN: Coach made the material misrepresentations, omissions, and non-disclosures detailed herein continuously at every point of purchase throughout the Class Period.

43.    WHERE: Coach's material misrepresentations, omissions, and non-disclosures detailed herein were made, *inter alia*, on the tag of the Coach Outlet Products.

44.     HOW: Coach made numerous, written material misrepresentations on the tags of the Coach Outlet Products which were designed to, and, in fact, did, mislead Plaintiff and Class members into purchasing the Coach Outlet Products.

45.     WHY: Coach engaged in the material misrepresentations, omissions, and non-disclosures detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay more for the Coach Outlet Products based on their belief they were receiving a reduced price. Coach profited by selling the Coach Outlet Products to unsuspecting consumers.

## CLASS ALLEGATIONS

46.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following classes:

(a) The "New Hampshire Class," which consists of: All consumers within the State of New Hampshire who purchased a Coach Outlet Product from a Coach Outlet during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the New Hampshire Class are Coach's current or former officers, directors, employees, Coach's parents, any entity in which Coach has a controlling interest; counsel for Plaintiff and Coach; and the judicial officer to whom this lawsuit is assigned.

(b) The "Nationwide Class," which consists of: All consumers in the United States and its territories who purchased a Coach Outlet Product from a Coach Outlet during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the Nationwide Class are Coach's current or former officers, directors, employees, Coach's parents, any entity in which Coach has a controlling interest; counsel for Plaintiff and Coach; and the judicial officer to whom this lawsuit is assigned.

47.     Plaintiff reserves the right to expand, limit, modify, or amend these class definitions, including the addition of more subclasses, in connection with his motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

48.     The members of the Class are so numerous that joinder is impractical. While the exact number of class members is presently unknown to Plaintiff, based on Coach's volume of sales, Plaintiff estimates each class numbers in the thousands.

49.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether, during the Class Period, Coach used false price representations and falsely advertised price reductions on its merchandise sold at Coach Outlets;

(b)     Whether Coach engaged in unfair, unlawful and/or fraudulent business practices under New Hampshire law;

(c)     Whether Coach misrepresented and/or failed to disclose material facts about its product pricing and price reductions;

(d)     Whether Coach has made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(e)     Whether Coach's conduct, as alleged herein, was intentional and knowing;

(f)     Whether Class members are entitled to damages and/or restitution, and in what amount;

(g)     Whether Coach is likely to continue using false, misleading or illegal price comparisons such that an injunction is necessary; and

(h)     Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

50.     Plaintiff's claims are typical of the claims of the members of the Class and, like all members of the Class, purchased goods from a Coach Outlet that falsely conveyed a "MFSRP" representation and a fictitious price reduction. Accordingly, Plaintiff has no interests antagonistic to the interests of any other member of the Class.

51.     Plaintiff will fairly and adequately represent and protect the interests of the members of each Class. Plaintiff does not have any interests which are adverse to those of the class members. Plaintiff has retained competent counsel experienced in Class action litigation and intends to prosecute this action vigorously.

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Coach's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

53.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Coach. For example, one court might enjoin Coach from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

54.    The conduct of Coach is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, the systematic policies and practices of Coach make declaratory appropriate.

## FIRST CAUSE OF ACTION
**(Violation of the New Hampshire Consumer Protection Act – N.H. Rev. Stat. Ann. § 358-A:1, *et seq.* – By the New Hampshire Class)**

55.    Plaintiff incorporates by reference the allegations set forth above.

56.    Plaintiff brings this claim individually and on behalf of the other members of the New Hampshire Class.

57.    This cause of action is brought pursuant to the New Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

58.    Coach is a "person" as defined by the CPA. N.H. Rev. Stat. Ann. § 358-A:1(I). Coach is engaged in "trade" or "commerce" within the meaning of the CPA. N.H. Rev. Stat. Ann. § 358-A:1(II)

59.    Section 358-A:2 of the CPA declares "it "unlawful  for any person to use any unfair methods of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce." N.H. Rev. Stat. Ann. § 358-A:2  Specifically, the CPA lists as a violation of the statute, "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."  N.H. Rev. Stat. Ann. § 358-A:2(XI).

60.    Coach violated the CPA by engaging in, and continuing to engage in, unfair and deceptive practices and false advertising by representing a false and misleading "MFSRP" and corresponding reduced price representation for goods exclusively manufactured for sale at Coach Outlets. As a result, the inflated "MFSRP" and corresponding reduced price was nothing more than a false, misleading and deceptive price reduction.

13

61.     These acts and practices are unfair because they caused Plaintiff, and are likely to cause consumers, to falsely believe Coach Outlets are offering price reductions from the prevailing market value of the Coach Outlet Products which do not, in fact, exist. As a result, consumers—including Plaintiff—reasonably perceived they were receiving Coach Outlet Products which were regularly sold at substantially higher prices (and were, therefore, worth more) than what they paid. This perception induced reasonable consumers, including Plaintiff, to purchase Coach Outlet Products and/or pay more for such Coach Outlet Products, which they otherwise would not have purchased.

62.     The reasonable consumer relies on clothing companies to honestly represent the price of their products and any associated price reductions.

63.     The damages suffered by the Plaintiff and the New Hampshire Class were directly and proximately caused by the deceptive, misleading and unfair practices of Coach, as described above.

64.     Pursuant to Sections 358-A:10 and 358-A-10-a, Plaintiff and other New Hampshire Class members seek to a declaratory judgment and court order enjoining the above described wrongful acts and practices of the Coach and for restitution and disgorgement. N.H. Rev. Stat. Ann. §§ 358-A:10,  358-A:10-a.

65.     Additionally, pursuant to Sections 358-A:10 and 358-A-10-a, Plaintiff and the Class make claims for damages, attorney's fees and costs. *Id.*

66.     THEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation – By the New Hampshire Class)

67.     Plaintiff incorporates by reference the allegations set forth above.

68.     Coach has negligently represented a false and misleading "MFSRP" and corresponding reduced price representation for goods exclusively manufactured for sale at Coach Outlets. As a result, the inflated "MFSRP" and corresponding reduced price was nothing more than a false, misleading and deceptive illusion of a price reduction.

69.     Coach has omitted material facts to the public, including Plaintiff and New Hampshire Class Members, about its Coach Outlet Products. On the label, Coach has failed to disclose the actual value of the Coach Outlet Products and any corresponding price reductions.

70.     Coach knew or should have known that these misrepresentation and/or omissions would materially affect Plaintiff's and New Hampshire Class Members' decisions to purchase the Coach Outlet Products.

71.     Plaintiff and other reasonable consumers, including the New Hampshire Class Members, reasonably relied on Coach's representations set forth herein, and, in reliance thereon, purchased the Coach Outlet Products.

72.     The reliance by Plaintiff and New Hampshire Class Members was reasonable and justified in that Coach appeared to be, and represented itself to be, a reputable business.

73.     Plaintiff would not have been willing to pay for Coach's Outlet Products if she knew the price reduction was false, misleading, and a deceptive illusion.

74.     As a direct and proximate result of these misrepresentations, Plaintiff and members of the New Hampshire Class were induced to purchase Coach Outlet Products, and have suffered damages to be determined at trial. Specifically, among other things, Plaintiff and New Hampshire Class members have been deprived of the benefit of their bargain in that they bought Coach Outlet Products which were not what they were represented to be, and they spent money on Coach Outlet Products which were of less value than was reflected in the price on the label.

75.     THEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION
**(Negligent Misrepresentation under New York Common Law – By the Nationwide Class)**

76.     Plaintiff incorporates by reference the allegations set forth above.

77.     As discussed above, Coach represented a false and misleading "MFSRP" and corresponding reduced price representation for goods exclusively manufactured for sale at Coach Outlets. As a result, the inflated "MFSRP" and corresponding reduced price was nothing more than a false, misleading and deceptive illusion of a price reduction.

78.     At the times Coach made these representations, Coach knew or should have known these representations were false or made them without knowledge of their truth or veracity.

79.     At a minimum, Coach negligently misrepresented and/or negligently omitted material facts about the Coach Outlet Products.

80.     The negligent misrepresentations and omissions made by Coach, upon which Plaintiff and the Nationwide Class members reasonably and justifiably relied, were intended to induce and actually did induce Plaintiff and the Nationwide Class members to purchase the Coach Outlet Products.

81.     Plaintiff and the Nationwide Class members would not have purchased the Coach Outlet Products, at the price they did, if the true facts had been known.

82.     The negligent actions of Coach caused damage to Plaintiff and the Nationwide Class members, who are entitled to damages and other legal and equitable relief as a result.

83.     THEREFORE, Plaintiff prays for relief as set forth below.

### FOURTH CAUSE OF ACTION
**(Fraud under New York Common Law – By the Nationwide Class)**

84.     Plaintiff incorporates by reference the allegations set forth above.

85.     As discussed above, Coach provided Plaintiff and the Nationwide Class members with false or misleading material information and failed to disclose material facts about the Coach Outlet Products, including, but not limited to the claims regarding the price reduction price of the Coach Outlet Products. These misrepresentations and omissions were made with knowledge of their falsehood.

86.     The misrepresentations and omissions made by Coach, upon which Plaintiff and the Nationwide Class members reasonably and justifiably relied, were intended to induce and actually did induce Plaintiff and the Nationwide Class members to purchase the Coach Outlet Products.

87.     The fraudulent actions of Coach caused damage to Plaintiff and the Nationwide Class members, who are entitled to damages and other legal and equitable relief as a result.

88.     THEREFORE, Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION
**(Unjust Enrichment on Behalf of the Nationwide Class,
or in the Alternative, on behalf of the New Hampshire Class)**

89.     Plaintiff incorporates by reference the allegations set forth above.

90.     Plaintiff asserts this claim in the alternative to the above-listed claims.

91.     Plaintiff brings this claim individually, as well as on behalf of members of the Nationwide Class, under New York law. Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no true conflict exists—relating to the elements of unjust enrichment—between the

different jurisdictions from which Class members will be drawn, New York law applies to the claims of the Nationwide Class.

92.     In the alternative, Plaintiff brings this claim individually as well as on behalf of the New Hampshire Class under New Hampshire Law.

93.     At all times relevant hereto, Coach deceptively priced, marketed, advertised, and sold Coach Outlet Products to Plaintiff and the Nationwide Class.

94.     Plaintiff and members of the Nationwide Class conferred upon Coach nongratuitous payments for merchandise they would not have paid for if not for Coach's deceptive pricing, advertising, and marketing. Coach accepted or retained the nongratuitous benefits conferred by Plaintiff and members of the Nationwide Class, with full knowledge and awareness that, as a result of Coach's deception, Plaintiff and members of the Nationwide Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Coach and reasonable consumers would have expected.

95.     Coach has been unjustly enriched in retaining the revenues derived from purchases of merchandise by Plaintiff and members of the Nationwide Class, which retention under these circumstances is unjust and inequitable because Coach misrepresented, among other things, its merchandise was being offered at a significant price reduction, which caused injuries to Plaintiff and members of the Nationwide Class because they paid for, and/or paid a price premium due to the misleading pricing and advertising.

96.     Retaining the non-gratuitous benefits conferred upon Coach by Plaintiff and members of the Nationwide Class under these circumstances made Coach's retention of the non-gratuitous benefits unjust and inequitable. Thus, Coach must pay restitution to Plaintiff and members of the Nationwide Class for unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the members of the Class demand a jury trial on all claims so triable and judgment against Coach as follows:

A.      An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel;

B.      Restitution and/or disgorgement of amounts paid by Plaintiff and members of the Classes for the purchase of the Coach Outlet Products, together with interest from the date of payment;

C.      Actual damages;

D.      An order granting injunctive relief;

E.      Statutory prejudgment interest;

F.      Reasonable attorneys' fees and the costs of this action, including costs of administration and notice;

G.      Other legal and equitable relief under the causes of action state herein; a

H.      A trial by jury on all issues so triable; and

I.      Such other relief as this Court may deem just and proper.


Dated: February 12, 2016                 Respectfully submitted,

                                         BY:*/s/ Benjamin D. Elga* _____

                                         **CUNEO GILBERT & LADUCA, LLP**
                                         Benjamin Elga (Bar No. 5332861)
                                         *belga@cuneolaw.com*
                                         16 Court Street, Suite 1012
                                         Brooklyn, NY 11241
                                         Telephone: (202) 789-3960
                                         Facsimile: (202) 789-1813

**CUNEO GILBERT & LADUCA, LLP**
Charles J. LaDuca, (Bar No. 3975927)
*charles@cuneolaw.com*
8120 Woodmont Ave., Suite 810
Bethesda, MD 20814
Telephone: (202) 789-3960
Facsimile: (202) 789-1813

**TYCKO & ZAVAREEI LLP**
Jeffrey D. Kaliel (to be admitted *pro hac vice*)
*jkaliel@tzlegal.com*
2000 L. Street, N.W., Suite 808
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

**HALUNEN LAW**
Melissa W. Wolchansky (to be admitted *pro hac vice*)
*wolchansky@halunenlaw.com*
Charles D. Moore (to be admitted *pro hac vice*)
*moore@halunenlaw.com*
1650 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
Jeffrey M. Ostrow (to be admitted *pro hac vice*)
*ostrow@kolawyers.com*
Scott Edelsberg (to be admitted *pro hac vice*)
*edelsberg@kolawyers.com*
One West Las Olas Boulevard., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 449-4602

**MIRABELLA LAW, LLC**
Erica Mirabella (to be admitted *pro hac vice*)
erica@mirabellallc.com
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: (855) 505-5342