**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHELLE MARINO, DEBORAH ESPARZA, MONICA RAEL, and CERA HINKEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COACH, INC., a Maryland corporation,<br><br>Defendant. | CASE NO.: 1:16-cv-1122-VEC (Lead)<br><br>Consolidated Member Case Nos.:<br>1:16-cv-3677-VEC<br>1:16-cv-3773-VEC<br>1:16-cv-5320-VEC<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiffs Michelle Marino, Deborah Esparza, Monica Rael, and Cera Hinkey (collectively, "Plaintiffs") bring this Consolidated Complaint ("Complaint") against Defendant Coach, Inc. ("Defendant" or "Coach") on behalf of themselves and all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

**NATURE OF THE CASE**

1.      A manufacturer's suggested retail price ("MSRP" or "MFSRP"), also called a "list price" or "retail price," is commonly known to represent the price at which the manufacturer suggests the retailer place a product for sale.

2.      In a vertically integrated manufacturer-retailer arrangement, where the seller offers products manufactured *exclusively* and intended *solely* for sale in its own stores, the seller's "suggestion" of a price to itself that it knows it will never use is deceptive. When a seller never intended to sell products at the MFSRP, and never sold products at the MFSRP, the MFSRP exists to provide an illusory discount when compared to the actual sales price offered.

This is a deceptive pricing scheme used to make consumers believe they are receiving a discount off a retail price.

3.      Plaintiffs, as well as many other consumers nationwide, were subjected to this deceptive pricing scheme when purchasing products from Coach.

4.      Coach owns and operates outlet stores called Coach Factory stores ("Coach outlet stores" or "Coach outlets") nationwide. At Coach outlets, Coach offers for sale products manufactured exclusively for the Coach outlets ("Coach Outlet Product(s)"). Coach Outlet Products can be identified by the letter "F" at the beginning of the product's Style Number, as shown below.





**Hangtag in Coach outlet**       **Hangtag in Coach mainline store**

5.      Coach does not offer its Coach Outlet Products for sale to any other retailer or reseller. Nor does Coach offer the Coach Outlet Products for sale at its own mainline stores. Despite Coach's position as a vertically integrated operation with respect to its outlet stores, Coach includes a "suggested" retail price, or MFSRP, on Coach Outlet Products that far exceeds the price at which it sells them.

6.      Defendant never offers Coach Outlet Products for sale at the MFSRP advertised on the products' hangtags. Instead, it offers the Coach Outlet Products for sale at significantly lower prices marked on the shelving or area surrounding the products. This tactic is called "reference pricing," which is designed to signal to consumers that the lower price they are being asked to pay represents a discount off the market value of the goods in question.

7.      Further exacerbating Plaintiffs' and other reasonable consumers' perception of deep discounts is the fact that Coach sells higher quality products, similar in style to the Coach Outlet Products, at its mainline retail stores. Mainline retail products are better quality (e.g., made of better leather and with more detailed stitching, sometimes with fewer seams). Yet the mainline retail products are often sold at prices *lower* than the MFSRPs advertised on the similarly-styled, made-for-outlet products.

8.      The superior yet lower-priced goods at Coach mainline stores demonstrate that the MFSRP reference pricing claims Coach makes in its outlet stores are wholly illusory.

9.      Because Coach is the vertically integrated, manufacturer-retailer of its Coach Outlet Products, the "manufacturer's suggested retail price" advertised on all of its Coach Outlet Products, for sale only in its own outlet stores, is illusory.

10.     In addition to believing they are receiving a significant discount, Plaintiffs and other consumers believed that the MFSRPs represented former prices of the products.  On the basis of this belief, Plaintiffs were led to believe that the sales price, lower than the MFSRP, was a significant discount off of the former price at which the products were sold.  Products sold at Coach outlet stores, including even those not exclusively made-for-outlet, do not have a prevailing market price anywhere close to the former MFSRP advertised by Coach.

11.     Thousands of consumers were victims of Coach's deceptive, misleading, and unlawful false pricing scheme and thousands more will be deceived if the practice continues.

12.     Coach fraudulently concealed from, and intentionally failed to disclose to, Plaintiffs, and others similarly situated, the true facts about the Coach Outlet Products' prices and advertised prices, and purported savings and bargains.

13.     Both the MFSRP and actual sales price are objectively material terms of the bargain to reasonable consumers, including Plaintiffs.

14.     Plaintiffs relied on Coach's representations that the shelf price was a discount when purchasing Coach Outlet Products from Coach outlet stores. Plaintiffs would not have made such purchases, or would have paid less than they did, but for Coach's representations and fraudulent omissions.

15.     Plaintiffs reasonably believed the truth of the price tags attached to the products they purchased at Coach outlet stores. Those tags suggested that they were getting a significant percentage discount off a price actually suggested by the manufacturer and offered to the public. Plaintiffs reasonably understood the MFSRP to be a valid representation of the retail price. However, because Coach never adopted its own suggested price, its "suggestion" merely constituted a ploy to conjure the illusion of a non-existent "discount" on goods that were never offered anywhere for the higher price Coach claimed.

16.     Plaintiffs reasonably believed that the price tags attached to the products purchased at Coach outlet stores signified a former price at which the products were sold in the marketplace.  Those tags suggested that they were getting a significant percentage discount off a price at which the products were formerly sold.  Plaintiffs reasonably understood the MFSRP to be a valid representation of a former retail price.  However, the MFSRPs did not represent a former price or the prevailing market prices for the products.

17.     Through their false and deceptive advertising and pricing scheme, Coach violated, and continues to violate state and federal law prohibiting advertising goods for sale as discounted

4

from prices that are false, and prohibiting misleading statements about the existence and amount of price reductions.

18.     Plaintiffs, individually and on behalf of all others similarly situated, seek damages, restitution, and all other remedies to which they are entitled under the statutes and common law identified herein, even if it is not demanded in the pleadings.

## PARTIES

19.     Plaintiff Deborah Esparza, an individual, is a citizen and resident of Los Angeles County, California. During the summer of 2014, in reliance on Coach's false and deceptive advertising, marketing, and pricing schemes, Plaintiff Esparza purchased at least one black wristlet handbag in signature fabric, Style No. F64375, from the Coach outlet store at the Cabazon Outlets in Cabazon, California, with a hangtag stating a MFSRP of $65.00 during the Class Period (defined below). Plaintiff Esparza's recollection is that she paid approximately $35 to $40 for the wristlet. Plaintiff Esparza believed her purchase, based on this discount, was a good deal; relied on the truth of Coach's MFSRP in deciding to make this purchase; and would not have purchased the wristlet, or would not have paid as much as she did for the wristlet, but for Coach's false and deceptive advertising, marketing, and pricing schemes, detailed herein.

20.     Plaintiff Monica Rael is a citizen of California residing in San Diego County, California. On December 5, 2015, in reliance on Coach's false and deceptive advertising, marketing, and pricing schemes, Plaintiff Rael purchased a handbag, Style No. F34614, from the Coach outlet store in Carlsbad, California with a hangtag stating a MFSRP of $395.00 during the Class Period (defined below). Plaintiff Rael paid $119.20 for the handbag. Plaintiff Rael believed her purchase, based on this discount, was a good deal; relied on the truth of Coach's MFSRP in deciding to make this purchase; and would not have purchased the handbag, or would not have

paid as much as she did for the handbag, but for Coach's false and deceptive advertising, marketing, and pricing schemes, detailed herein.

21.    Plaintiff Cera Hinkey is a citizen of California residing in Placer County, California. In or about August 2014, in reliance on Coach's false and deceptive advertising, marketing, and pricing schemes, Plaintiff Hinkey purchased a pair of sunglasses marked as "IRMA (Coach L993)" from the Coach outlet store in Folsom, California with a hangtag stating a MFSRP of $158.00 during the Class Period (defined below). Plaintiff Hinkey paid approximately $65.00 for the sunglasses. Plaintiff Hinkey believed her purchase, based on this discount, was a good deal; relied on the truth of Coach's MFSRP in deciding to make this purchase; and would not have purchased the sunglasses, or would not have paid as much as she did for the sunglasses, but for Coach's false and deceptive advertising, marketing, and pricing schemes, detailed herein.

22.    Plaintiff Esparza, Plaintiff Rael, and Plaintiff Hinkey are collectively referred to herein as the "California Plaintiffs."

23.    Plaintiff Michelle Marino is a citizen of Massachusetts residing in Middlesex County, Massachusetts. On or around November 29, 2014, in reliance on Coach's false and deceptive advertising, marketing, and pricing schemes, Plaintiff Marino purchased a wristlet, Style No. F51763, from the Coach outlet store at the Merrimack Premium Outlets in Merrimack, New Hampshire, with a hangtag stating a MFSRP of $78.00 during the Class Period (defined below). Plaintiff Marino paid approximately $40.00 for the wristlet. Plaintiff Marino believed her purchase, based on this discount, was a good deal; relied on the truth of Coach's MFSRP in deciding to make this purchase; and would not have purchased the wristlet, or would not have paid as much as she did for the wristlet, but for Coach's false and deceptive advertising, marketing, and pricing schemes, detailed herein.

6

24.     Defendant Coach, Inc., is a publicly traded Maryland corporation (NASDAQ COH) with a principal place of business located at 516 West 34th Street, New York, New York 10001. Coach's agent for service of process in its state of incorporation is The Corporation Trust Incorporated, located at 351 West Camden Street, Baltimore, Maryland 21201. Coach owns and operates over 1,000 Coach store locations worldwide.[1]

25.     Coach's corporate headquarters are in New York City, New York. The employees who were, and are, involved with the pricing decisions placed at issue in this Complaint work at Coach's headquarters in New York. Most of the documentary evidence relevant to this Complaint is located at Coach's headquarters in New York, including the relevant policies and communications

26.     As of the date of filing this Complaint, Coach operates approximately 27 outlet stores in California, 3 outlet stores in New Hampshire, and 10 outlet stores in New York.[2] Nationwide, Coach's 204 outlet stores account for roughly 40% of its sales. The pricing decisions and directives to these stores emanated from New York.

**JURISDICTION AND VENUE**

27.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one member of the Class is of diverse citizenship from Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000.[3]

---

[1] http://www.coach.com/careers-about-coach.html (last visited September 26, 2016).

[2] http://www.coach.com/stores (follow "Find By State" dropdown menu to each respective state and click "Search State").

[3] The amount in controversy is satisfied, in part, by an examination of Coach's Form 10-K filings. *See, e.g.*, Coach, Inc., Annual Report (Form 10-K) at 91 (Aug. 14, 2015), *available at* http://www.coach.com/financial-reports.html.

28.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in New York, Defendant conducts business in New York, a substantial portion of the wrongdoing alleged by Plaintiffs occurred in New York and this District, and Defendant has sufficient minimum contacts with or otherwise have purposefully availed itself of the markets of New York and this District such that it is fair and just for Defendant to adjudicate this dispute in this District.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Coach's principal place of business is found within this District, and a substantial part of the conduct, events, and omissions giving rise to the claims occurred in this District and, as a corporation subject to personal jurisdiction in this District, Defendant conducts business in this District.

## FACTUAL ALLEGATIONS

30.     Coach markets itself as a "leading New York design house of modern luxury accessories" and as a "global leader in premium handbags."[4] Having the designation of a "luxury" brand is important to Coach because:

> The Coach brand stands for authenticity, innovation and relevance.
> …
> Now, we're building on our brand strengths with a vision:
>
> "TO BECOME THE COMPANY THAT DEFINES GLOBAL MODERN LUXURY."
>
> It's an ambitious plan for our future—one that we are uniquely suited to—and an extraordinary opportunity to make luxury more meaningful, liberating, inviting, and approachable for those who desire more than status.[5]

---

[4] Coach, http://www.coach.com/careers-about-coach.html (last visited September 26, 2016).

[5] *Id.*

31.    For consumers, luxury brands such as Coach offer a sense of status, wealth, and exclusivity.[6] In consumers' minds, this desire for luxury brands has translated into an 8.2% growth in the sales of luxury goods year-over-year.[7]

32.    Taking advantage of cost-conscious consumers' desire for luxury brands, Coach operates Coach outlet stores in a way that simultaneously markets luxury and "target[s] value-oriented customers"[8] through its advertising strategy.

33.    In fact, Coach has publicly recognized that, during a time period when comparable sales through its other channels have been flat, trends at its "discount," outlet stores accelerated, and that the success of the outlet stores is critical to Defendants' overall, long-term success. As a result, Coach's 204 outlet stores account for roughly 40% of its sales.

34.    For consumers of luxury goods, such as Coach's, the price of a product plays an important role in creating their perception of the good's higher quality.[9] "Often used as evidence for judging quality, status-conscious consumers tend to use a price cue also as a surrogate

---

[6] Brent McFerran, *Why Do We Buy Luxury Brands—and How Do they Make Us Feel?*, PSYCHOLOGY TODAY (May 22, 2014), *available at* https://www.psychologytoday.com/blog/ill-have-what-shes-having/201405/why-do-we-buy-luxury-brands-and-how-do-they-make-us-feel.

[7] *Global Powers of Luxury Goods 2015*, Deloitte (2015), *available at* http://www2.deloitte.com/gu/en/pages/consumer-business/articles/global-powers-of-luxury-goods-2015.html.

[8] Coach, Inc., Form 10-K (Annual Report) at 4 (Aug. 19, 2016).

[9] Kalus=Peter Weidmann, Nadine Hennigs, Astrid Siebels, *Measuring Consumers' Luxury Value Perception: A Cross-Cultural Framework*, ACADEMY OF MARKING SCIENCE (2007) at 6, *available                                                                                  at* https://www.researchgate.net/profile/KlausPeter_Wiedmann/publication/228344191_Measuring_consumers'_luxury_value_perception_A_cross-cultural_framework/links/0c960524146a1d3e28000000.pdf.

indicator of prestige."[10] "Thus, prestige pricing—setting a rather high price to suggest high quality and/or high status—may even make certain products or services more desirable."[11]

35.     At the same time, perceptions of savings also impact consumers' willingness to purchase an item. For consumers, both the dollar and percentage amount of the deal positively influence their perception of their savings.[12] Likewise, the presence of a "regular price" as an external reference price increases perceptions of objective value, thereby raising the consumer's desire to purchase the product.[13]

36.     Empirical marketing studies demonstrate that reference pricing actually creates an impression of higher value:

> Comparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings… [A] comparative price advertisement can be construed as deceptive if it makes any representation, … or involves any practice that may materially mislead a reasonable consumer.

*Comparative Price Advertising: Informative or Deceptive?*, Dhruv Grewal and Larry D. Compeau, Journal of Public Policy & Marketing, Vol. 11, No. 1, at 52 (Spring 1992). Furthermore,

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product… Thus, the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id.* at 55−56.

---

[10] *Id.*

[11] *Id.*

[12] Joseph W. Alba (editor), Aradhana Krishna (contributor), *Perceptions of Price Deals*, Consumer Insights: Finding from Behavioral Research (2011) at 2, *available at* http://www.msi.org/uploads/files/ConsumerInsights-Chap7.pdf.

[13] *Id.*

37.     Taken together, in the luxury product market, setting a high MFSRP gives the consumer the perception that the luxury item is more valuable, thereby making it more desirable. Simultaneously, if the high MFSRP is juxtaposed against a lower sales price, consumers are given a perception of savings, thus making the item more desirable. As such, the consumer is hit with the double whammy of a perception of quality along with a perception of savings.

38.     Normally, a manufacturer's suggested retail price suggests the amount (greater than wholesale cost) at which third party retailers should consider charging patrons. When the retailer is distinct from the manufacturer, the MFSRP informs resellers and consumers of the manufacturer's ideal price for that product. For a retailer, it identifies the amount at which that same product is likely sold by other retailers. For example, if the MFSRP is $50.00 and the manufacturer sells the product to the retailer at a wholesale price of $25, the retailer then has the potential to make a $25.00 profit by selling it at the MFSRP. Theoretically, if it is willing to sell it for less than the MFSRP, the retailer can potentially undercut competition.

39.     This traditional practice has no meaning when the manufacturer and retailer are vertically integrated, like Coach: the use of MFSRP in such circumstances is merely a ruse.

40.     Coach's strategy and practice is to advertise prices that do not—and never did— exist. At base, it is meaningless to suggest to oneself to charge a certain price one never intends to charge. In reality, the MFSRP on Coach Outlet Products exists only as a misleading reference price, signaling a non-existent discount to patrons.[14] This creates a false impression of quality

---

[14] The FTC has specifically identified pre-ticketing of a suggested retail or list price by the manufacturer, the practice used by Coach, as advertising: "There are many methods by which manufacturers' suggested retail or list prices are advertised: Large scale (often nationwide) mass-media advertising by the manufacturer himself; preticketing by the manufacturer; direct mail advertising; distribution of promotional material or price lists designed for display to the public. The mechanics used are not of the essence. This part is concerned with any means employed for placing such prices before the consuming public." 16 C.F.R. § 233.3(b).

and value, as the reference price is not based on sales data. This is particularly true given that the higher end versions of outlet items sell at Coach's mainline stores for a list price *less* than the MFSRP on display at the outlet.

41.    Coach's pricing practice is unmistakably intentional. The Coach outlet MFSRP pricing scheme is prominently displayed on all Coach Outlet Products available for sale at Coach outlets. To illustrate, a $395.00 MFSRP tag for an item sold at a Coach outlet is pictured below:



42.    The Coach Outlet Product above, as indicated by its Style No. F35723, was placed on a shelf prominently labeled with the price "$349" as illustrated below:



43.     In other words, the bag (called the "Phoebe" bag) on the shelf in the above image bears a hangtag label that states the "MFSRP" is "$395.00." This signifies to a reasonable consumer that the retail price of the Phoebe bag—a price that the manufacturer (Coach) signified—is $395.00. When a reasonable consumer sees the clearly marked outlet sales price of "$349," the consumer reasonably believes he or she is receiving a $46.00 discount (11.65% off the MFSRP). The MFSRP provides a reference price from which a consumer calculates the discount, which he or she then uses to decide to make a purchase.

44.     Coach further conveys this deceptive pricing scheme on its sales receipts. The sales receipts subtracts the posted "sales" price from the MFSRP price, and then uses that difference to show the amount the customer purportedly saved. Thus, a consumer buying the Phoebe bag for $349 would receive a sales receipt stating prominently (in capitalized letters): "YOU SAVED $46.00."

45.     Yet $349.00 was the actual price at which the Phoebe bag was offered for sale at the Coach outlet store, subject to any other additional percentage discounts occurring in the store that day. The bag was never sold at the $395.00 MFSRP stated on the product's hangtag, nor was

it intended to be. Instead, the $395.00 MFSRP was entirely fabricated by Coach to mislead consumers to purchase the product and pay more for the product believing the $349.00 sales price was a good deal. The MFSRP exists solely to establish the false impression of a discount.

46.     Further illustrating that the pricing claims Coach makes in its outlet stores are illusory, Coach mainline retail stores sell a bag very similar in style and design to the Phoebe bag sold at Coach outlets. The image on the left below is a front-facing view of the "Edie" bag that is sold as a mainline retail, non-outlet product, available on www.coach.com and mainline Coach and other retail stores. It retails for $325—which is *less* than the MFSRP price on the tag of the Phoebe bag sold at Coach outlets.

 

**Edie bag sold in Coach mainline stores**          **Phoebe bag sold in Coach outlets**

47.     A comparison of the same bags from the front is also telling of their similarities:




**Edie bag sold in Coach mainline stores**          **Phoebe bag sold in Coach outlets**

48.     In other words, the Phoebe bag, sold exclusively in Coach outlets, has a $395 reference price tag, even though the similar and presumably higher quality Edie bag retails for $325 in Coach mainline and other retail stores. The Phoebe bag was created solely for Coach outlet stores (as indicated by Style No. F35723), was not sold in Coach mainline stores, and was *not* sold for $395.00. Because Coach is both the manufacturer and the retailer, its "suggested retail price" of $395.00 for sale of the Phoebe bag in its own stores is illusory.

49.     The Phoebe bag is of poorer quality than the bag sold in Coach mainline and other retail stores. It is made of fabric remnants instead of larger single pieces of fabric, evidenced by the additional seams. *See* image in ¶ 47. Such use of fabric remnants left over from other products is cost-efficient for Defendant and results in a bag of poorer quality than one with fewer seams, like the Edie bag. The inclusion of additional seams and additional pieces of fabric, among other differences, reduces the value of the bags, a reduction that a reasonable consumer should be made aware of in deciding to purchase a bag. Stating an MFSRP that is greater than

the mainline retail price of products presumed to be of superior quality is deceptive and misleading to Plaintiffs and other reasonable consumers.

50. As further evidence of the illusory MFSRP of the Phoebe bag and other Coach Outlet Products' MFSRPs, even the "sale" prices for these made-for-outlet products are *higher* than similar non-outlet products of higher quality (*i.e.* $349 for the "sale" price of the Phoebe bag versus $325 for the Edie bag).

51. The following images provide another instance of Coach's deceptive pricing scheme. Image A represents the sale price ($199) for a Coach Outlet Product—as indicated by Style No. F34607—and Image B is the hangtag attached to one of the Coach Outlet Products placed on the shelf in Image A, which bears an "MFSRP" of $395—a represented discount of 49.62%.

 

**Image A**                    **Image B**

52.     As a further example, wristlets, similar to one purchased by Plaintiff Esparza, are advertised with an MFSRP of $65.00 at Coach outlet stores, yet are sold on Coach's retail website for $49.00.[15] This leads to customers paying $16.00 more for an inferior-quality product.

53.     Coach's reference pricing scheme is designed solely to signal to consumers that the lower price they are actually being asked to pay represents a discount off the market value of the Coach Outlet Products. The problem is that the reference price is wholly illusory as it is not backed up by any sales data whatsoever. In fact, the MFSRP reference prices are higher than the actual prices for higher quality, similarly-styled items sold in Defendants' mainline stores, where Coach does not use reference pricing.

54.     Thus, Coach's MFSRP creates a false impression of a discount while at the same time representing that its goods have a higher quality and value than they do. Patrons believe that MFSRP is a representation of what these goods generally sell for in the marketplace, and Coach is taking advantage of that belief.

55.     The Federal Trade Commission ("FTC") describes the dangers and deceptiveness of false suggested retail prices or list prices in its "Guides Against Deceptive Pricing":

> (a) Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. **To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer**.

* * *

> (d) Typically, a list price is a price at which articles are sold, if not everywhere, then at least in the principal retail outlets which do not conduct their business on a

---

[15]     *See*     http://www.coach.com/coach-designer-wristlets-corner-zip-wristlet-in-signature-fabric/64283.html?cgid= gifts-women&dwvar_color=LIDQC (last visited February 22, 2016).

discount basis. It will not be deemed fictitious if it is the price at which substantial (that is, not isolated or insignificant) sales are made in the advertiser's trade area (the area in which he does business). Conversely, if the list price is significantly in excess of the highest price at which substantial sales in the trade area are made, there is a clear and serious danger of the consumer being misled by an advertised reduction from this price.

* * *

(i) It bears repeating that the manufacturer, distributor or retailer must in every case act honestly and in good faith in advertising a list price, and not with the intention of establishing a basis, or creating an instrumentality, for a deceptive comparison in any local or other trade area. For instance, a manufacturer may not affix price tickets containing inflated prices as an accommodation to particular retailers who intend to use such prices as the basis for advertising fictitious price reductions. [Guide III]

16 C.F.R. § 233.3 (emphasis added).

56.     Coach's use of the term MFSRP in its advertisements does not conform to the FTC definition of the synonymous term "list price" or the common meaning of the terms. Indeed, Coach did not set the MFSRP based on a price at which the products are sold elsewhere or in the principal retail outlets that do not conduct their business on a discount basis. Since Coach does not sell the products bearing the MFSRP anywhere other than at Coach outlets, the MFSRP is fabricated. There is no "discount" because there is no real price with which to make a comparison and from which to offer a discount.

57.     In affixing price tickets with false prices, Coach has advertised a false price reduction. Coach's advertisement of its "MFSRP" was likely to mislead customers by purporting to offer a savings when compared to the price offered for that product at Coach outlets. This misuse of the term MFSRP and falsification of any actual MFSRP allowed Coach to represent that it was offering the consumer a large discount off the MFSRP—the "manufacturer's" suggested retail price. Patrons paying the "sale" price in fact received no discount.

58.     Moreover, Coach, as the manufacturer, marketer, advertiser, and seller of its products, has total control over the MFSRP of products sold at Coach outlets. Because the Coach Outlet Products include a tag that clearly identifies an MFSRP, reasonable consumers believe the products sold at a manufacturer's own stores would reflect a true MFSRP—the *manufacturer's* suggested retail price. Particularly when products are intended to be sold exclusively at the manufacturer's outlet stores, inclusion by a manufacturer of a suggested price that it does not itself follow is deceptive to reasonable consumers like Plaintiffs. The MFSRPs did not represent the store's true retail prices for its private branded products, nor were they the prevailing retail market prices.

59.     Because there is no comparable price or intention to sell a product anywhere other than a Coach outlet store, Coach could have refrained from advertising a MFSRP at all and left consumers to do their own comparative shopping to decide for themselves whether the Coach Outlet Product offered sufficient value at the stated price. However, rather than exclude an MFSRP altogether for a product, Coach made up a MFSRP for that product, never intending to adopt it, for the sole purpose of making the actual price appear to be a discount on a product of ostensibly higher value.

60.     Coach's decision to advertise a price that did not exist was likely to deceive, and did deceive, reasonable consumers.

61.     Coach's representation of that price as an actual price or actual suggested price was unlawful, unfair, and fraudulent. Likewise, Coach's inherent representation that the sale price was a discount or price reduction was misleading and deceptive.

62.     In addition to the reference pricing scheme discussed above, Coach engaged in a false former pricing scheme, expressly prohibited under California law.  Coach misrepresented the existence of price discounts on products sold in its Coach outlet stores by purporting to offer

specific dollar discounts from expressly referenced former retail prices, misrepresented as the "MFSRP." These purported discounts were false, however, because the referenced, former retail prices were fabricated and did not represent former prevailing market retail prices within three months next immediately preceding the publication of the advertised former prices, as required by California law.

63.    The FTC describes false former pricing schemes, similar to Coach's, as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

16 C.F.R. § 233.1(a).

64.    California statutory and regulatory law expressly prohibits false former pricing schemes. California Business & Professions Code Section 17501, entitled "Value determinations; Former price advertisements," states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> **No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement. (Emphasis added.)

65.    Plaintiffs reasonably believed that the MFSRPs signified prices at which Coach products were formerly sold.

66.     Relying on Coach's misrepresentations and false and deceptive advertising, Plaintiffs purchased products they reasonably believed were formerly sold at the MFSRP listed on the hangtags and had a higher value than they actually did.   Plaintiffs believed they were obtaining discounts and purchasing products that regularly sold in the retail marketplace for a materially higher price.  This purported price reduction and savings was false and deceptive, as the prevailing retail price for Coach products purchased by Plaintiffs and other consumers during the three months immediately prior to their purchases of the respective items were materially lower than the former MFSRP prices represented by Coach. Plaintiffs and consumers of all Coach products sold at outlet stores therefore reasonably expected the goods had a significantly higher value than they had.

67.     Coach knew or should have known that creating false MFSRPs to create false discounts was unlawful and unfair. Furthermore, Coach's use of this scheme shows that it understands that reference pricing drives sales.

## CLASS ALLEGATIONS

68.     Pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following classes of similarly situated individuals initially defined as:

> All persons who purchased a Coach Outlet Product with a price tag bearing a Manufacturer's Suggested Retail Price in the United States at any time during the Class Period (the "Class" or "Nationwide Class");

> All persons who purchased a Coach Outlet Product with a price tag bearing a Manufacturer's Suggested Retail Price in a state identified in Count VII at any time during the Class Period (the "Multi-State Class").

69.     The California Plaintiffs also seek to represent the subclasses initially defined as:

All persons who purchased a Coach Outlet Product with a price tag bearing a Manufacturer's Suggested Retail Price in California at any time during the Class Period (the "California Subclass"); and

All persons who purchased a Coach product from a Coach outlet store with a price tag bearing a Manufacturer's Suggested Retail Price in California at any time during the Class Period (the "California Former Price Subclass").[16]

70.     Plaintiff Marino also seeks to represent a subclass initially defined as:

All persons who purchased a Coach Outlet Product with a price tag bearing a Manufacturer's Suggested Retail Price in New Hampshire at any time during the Class Period (the "New Hampshire Subclass").

71.     The "Class Period" for the Class and all subclasses dates back four years (or the longest applicable statute of limitations for any claim asserted) from the date this action was commenced and continues through the present and the date of judgment. Specifically excluded from the Class and subclasses are: (a) any officers, directors, or employees of Defendant; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

72.     Plaintiffs reserve the right to modify, expand, or amend the above class and subclass definitions or seek certification of a class or subclasses defined differently than above before any court determines whether certification is appropriate following discovery.

73.     **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. While the number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the Class numbers at least in the thousands or tens of thousands.

---

[16] The California Former Price Subclass is broader than the California Subclass, as it potentially includes products not exclusively made for Coach outlet stores.  It encompasses members of the California Subclass.

74.    **Commonality and Predominance.** There is a well-defined community of interest in the questions of law and fact affecting the parties to be represented in this action. Common questions of law and fact that exist as to all members of the Class and predominate over any questions affecting only individual members, include, but are not limited to:

(a)    Whether Coach's creation of MFSRP labels for use on Coach Outlet Products, when it never sold items with those MFSRPs in any of its stores, is deceptive;

(b)    Whether Coach's MFSRP is synonymous with an item's expected price, suggested sales price, or retail price;

(c)    Whether the MFSRPs advertised by Coach represent actual retail prices;

(d)    Whether the MFSRPs advertised by Coach are backed up by actual sales data for those items;

(e)    Whether Coach Outlet Products with an advertised MFSRP are sold at non-Coach outlet stores;

(f)    Whether Coach sold the Coach Outlet Products outside the Coach outlet stores for the stated MFSRPs;

(g)    Whether Coach engaged in unfair, unlawful, or fraudulent business practices in violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*.);

(h)    Whether Coach violated the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) by violating the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq*.);

(i)    Whether Coach violated the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*.) by violating the Federal Trade Commission Act (15 U.S.C. §§ 45(a)(1), 52(a));

(j)    Whether Coach's use of false or deceptive price advertising constituted false advertising under California law;

(k)     Whether the stated MFSRPs were the prevailing market prices for the respective products sold by Coach during the three month periods preceding the dissemination or publication of the advertised former prices;

(l)     Whether Coach's conduct, as alleged herein, violated the Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*);

(m)    Whether Coach's conduct, as alleged herein, violated the New Hampshire Consumer Protection Act (N.H. Rev. Stat. Ann § 358-A:1 *et seq.*);

(n)     Whether Coach misrepresented or failed to disclose material facts about its product pricing and discounts, including that the products were never sold for the MFSRP;

(o)     Whether Coach made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(p)     Whether Coach's conduct, as alleged herein, amounts to fraud under New York common law;

(q)     Whether Coach has been unjustly enriched as a result of its representations that the sales prices constituted price reductions;

(r)     Whether Coach's conduct, as alleged herein, was intentional and knowing;

(s)     Whether Coach is likely to continue to use false, misleading, or illegal price comparisons such that an injunction is necessary;

(t)     Whether Plaintiffs and Class members are entitled to damages or consumer restitution and the proper measure of that loss; and

(u)     The appropriate Class-wide measure of damages.

75.     **Typicality.** Plaintiffs are members of the Class and their claims are typical of the claims of members of the Class. Typical of members of the Class, Plaintiffs purchased at least one Coach Outlet Product during the Class Period with an MFSRP label. Plaintiffs and Class

members each sustained, and will continue to sustain, damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiffs' claims are founded on the same legal theories as those of the Class.

76.     **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class members and because Plaintiffs have retained counsel competent and experienced in complex class action and consumer litigation, including substantial experience in the types of claims alleged in this Complaint. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

77.     **Declaratory and Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class.

78.     **Superiority of Class Adjudication.** The certification of a class in this action is superior to the litigation of a multitude of cases by members of the Class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are Class members who are unlikely to join or bring an action due to, among other reasons, their reluctance to sue Defendant or their inability to afford a separate action. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the Class members in relation to the benefits received. The damages, restitution, and other potential recovery for each individual member of the Class are modest, relative to the substantial burden and expense of individual prosecution of these claims. Given the amount of the individual class members' claims, few, if any, Class members could afford to seek legal redress individually for the wrongs

complained of herein. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

79.     In the alternative, the above-referenced class may be certified because:

(a)     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendant;

(b)     The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the Class who are not parties to the adjudications, or which would substantially impair or impede the ability of other Class members to protect their interests; and

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class.

**COUNT I**
**Violation of Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200 *et seq.* – "Unfair" Prong**
**(By the California Plaintiffs on Behalf of the California Subclass)**

80.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

81.     The California Plaintiffs bring this action on behalf of themselves, on behalf of the California Subclass, and on behalf of the general public pursuant to Section 17200 *et seq.* of the Business & Professions Code, the Unfair Competition Law ("UCL").

82.     The UCL prohibits unfair competition, which includes an "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200 *et seq*.

83.     A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

84.     Coach committed, and continues to commit, "unfair" business acts or practices by, among other things:

(a)     engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to the California Plaintiffs and the members of the California Subclass;

(b)     engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to the California Plaintiffs and the members of the California Subclass; and

(c)     engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws that this Class Action Complaint invokes.

85.     Specifically, Coach engaged in unfair business acts or practices in violation of the UCL by representing false "MFSRPs" at which prices it never intended or expected to sell products. Coach's corresponding posting of lower sales prices for Coach Outlet Products, and further price reductions, resulted in false, misleading, and deceptive illusions of discounts.

86.     These acts and practices are unfair because they caused the California Plaintiffs and other reasonable consumers to falsely believe that Coach is offering value, discounts, or bargains from an actual retail price or a price at which the manufacturer expected the retailer to sell the products. The MFSRP, did not, in fact, exist. For Coach, the MFSRP is a false and deceptive marker of value. As a result, purchasers, including the California Plaintiffs, reasonably perceived that the products were worth more and valued at more than what they received.  This perception has induced reasonable purchasers, including the California Plaintiffs, to buy Coach Outlet Products, which they otherwise would not have purchased, would not have paid as much for, or would not have paid a premium price for a luxury item.

87.     The gravity of harm to members of the California Subclass resulting from these unfair acts and practices outweighed any business justifications for Coach's deceptive acts and practices. By committing the acts and practices alleged herein, Coach engaged in unfair business practices within the meaning of the UCL. Such acts and violations have not abated and will continue to occur unless enjoined.

88.     As a result of Coach's unfair acts and practices, the California Plaintiffs, the California Subclass, and the general public have suffered injury in fact and have lost money or property. These violations have unjustly enriched Coach at the expense of the California Plaintiffs and the California Subclass.

89.     Under Section 17203 of the Business & Professions Code, the California Plaintiffs and the other members of the California Subclass are entitled to (a) an injunction ordering Defendant to cease engaging in any acts of unfair competition and to engage in a corrective advertising campaign in compliance with all applicable laws; (b) restitution and disgorgement of all unjustly retained profits paid to Defendant; (c) equitable relief; (d) pre- and

post-judgment interest at the highest rate allowable by law; and (e) payment of attorneys' fees and costs pursuant to Section 1021.5 of the California Code of Civil Procedure.

90.     THEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT II**
**Violation of Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200 *et seq.* – "Fraudulent" Prong**
**(By the California Plaintiffs on Behalf of the California Subclass)**

91.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

92.     The California Plaintiffs bring this action on behalf of themselves, on behalf of the California Subclass, and on behalf of the general public pursuant to Section 17200 *et seq.* of the Business & Professions Code, the Unfair Competition Law ("UCL").

93.     The UCL prohibits unfair competition, which includes an "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200 *et seq.*

94.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

95.     The hangtags on Coach Outlet Products and advertising materials concerning false MFSRPs constitute "fraudulent" business acts or practices within the meaning of the UCL because they deceived the California Plaintiffs and were likely to deceive members of the California Subclass into believing that Coach was offering value, discounts, or bargains at Coach outlet stores from an actual retail price, intended retail price, or expected retail price of the products sold that did not, in fact, exist.

96.     Additionally, Coach's use of the term MFSRP is literally false. Coach, as the manufacturer, never "suggested" to its vertically integrated retail stores to charge the higher

retail price. To the contrary, it required actual sales prices to be lower than the "MFSRP." Coach's communication to its patrons that the "manufacturer" suggested that the "retailer" should charge a higher price is simply false. This false statement was material, was intended to drive sales, and resulted in Coach receiving income it otherwise would not have received.

97.     As a result, purchasers, including the California Plaintiffs, reasonably perceived that that the products were worth more and valued at more than what they received. This perception induced reasonable purchasers, including the California Plaintiffs, to buy Coach Outlet Products, which they otherwise would not have purchased, would not have paid as much for, or would not have paid a premium price for a luxury item.

98.     Coach's acts and practices as described herein have deceived the California Plaintiffs and were highly likely to deceive members of the consuming public. Specifically, in deciding to purchase Coach Outlet Products, the California Plaintiffs relied on Coach's false, misleading, and deceptive representations regarding its "MFSRP" and discounted prices. Each of these factors played a substantial role in the California Plaintiffs' decisions to purchase those products, and the California Plaintiffs would not have purchased those items or would not have paid as much for those items in the absence of Coach's misrepresentations. Accordingly, the California Plaintiffs suffered monetary loss as a direct result of Coach's pricing practices described herein.

99.     As a result of Coach's unfair acts and practices, the California Plaintiffs, members of the California Subclass, and the general public have suffered injury in fact and have lost money or property. These violations have unjustly enriched Coach at the expense of the California Plaintiffs and the California Subclass.

100.    Under Section 17203 of the Business & Professions Code, the California Plaintiffs and the other members of the California Subclass are entitled to (a) an injunction

ordering Defendant to cease engaging in any acts of unfair competition and to engage in a corrective advertising campaign in compliance with all applicable laws; (b) restitution and disgorgement of all unjustly retained profits paid to Defendant; (c) equitable relief; (d) pre- and post-judgment interest at the highest rate allowable by law; and (e) payment of attorneys' fees and costs pursuant to Section 1021.5 of the California Code of Civil Procedure.

101.    THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT III
### Violation of Unfair Competition Law,
### Cal. Bus. & Prof. Code § 17200 *et seq*. – "Unlawful" Prong
### (By the California Plaintiffs on Behalf of the California Subclass)

102.    Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

103.    The California Plaintiffs bring this action on behalf of themselves, on behalf of the California Subclass, and on behalf of the general public pursuant to Section 17200 *et seq*. of the Business & Professions Code, the Unfair Competition Law ("UCL").

104.    California's UCL prohibits unfair competition, which includes an "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200 *et seq*.

105.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

106.    Coach committed, and continues to commit, "unlawful" business acts or practices by, among other things, violating the California's Business & Professions Code Section 17200 *et seq*. (the "UCL"), California's Business and Professions Code Section 17500 *et seq*. (the "FAL"), the California Consumers' Legal Remedies Act, Civil Code Section 1750 *et seq*. (the "CLRA"), New Hampshire's Consumer Protection Act Section 358-A:1 *et seq*. (the "CPA"),

New York common law prohibiting fraud, and the Federal Trade Commission Act ("FTCA"), as described herein.

107.    By way of example, Coach's conduct is unlawful in that it violates the CLRA (Cal. Civ. Code § 1750 *et seq*.). Civil Code Section 1770, subsection (a)(7) prohibits a business from "representing that goods … are of a particular standard, quality, or grade … if they are of another," subsection (a)(9) prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

108.    Because prices are a representation of quality and value, in representing that its outlet products had a certain retail price, Coach represented that those products were of a higher standard, quality, or grade when they were of another. In representing that the actual sale price was less than the MFSRP, Coach advertised its goods were being sold at a discount, when in reality the discount was illusory and thus Coach intended not to sell them at a discount. In representing that the actual sale price was less than the MFSRP, Coach made false or misleading statements of fact concerning the existence of, or amounts of, price reductions.

109.    As a further example, Coach's conduct is also unlawful because it violates the FTCA (15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a)).

110.    The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. 15 U.S.C. §§ 45(a)(1), 52(a). The FTC has established regulatory guidelines that prohibit false pricing schemes, similar to Coach's MFSRP scheme in material respects, as deceptive practices that would violate the FTCA. 16 C.F.R. § 233.1 *et seq.*

111.     Coach's use of and reference to a materially false "MFSRP" in connection with its marketing and advertisements concerning the Coach Outlet Products violated and continues to violate the FTCA, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at 16 C.F.R. § 233, including but not limited to section 233.3, "Advertising retail prices which have been established or suggested by manufacturers (or other nonretail distributors)," which states in part,

> Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer.

> * * *

> [T]he manufacturer, distributor or retailer must in every case act honestly and in good faith in advertising a list price, and not with the intention of establishing a basis, or creating an instrumentality, for a deceptive comparison in any local or other trade area. For instance, a manufacturer may not affix price tickets containing inflated prices as an accommodation to particular retailers who intend to use such prices as the basis for advertising fictitious price reductions.

16 C.F.R. § 233.3.

112.     Coach deceived consumers into believing that they were offering value, discounts, or bargains at Coach outlet stores from an actual retail price, intended retail price, or expected retail price of the products sold that did not, in fact, exist.

113.     As a result, purchasers, including the California Plaintiffs, believed that the products were worth more and valued at more than what they received based on Coach's misrepresentation of the MFSRP value. This perception has induced reasonable purchasers, including the California Plaintiffs, to buy Coach Outlet Products, which they otherwise would

not have purchased, would not have paid as much for, or would not have paid a premium price for a luxury item.

114.    Coach's acts and practices as described herein have deceived the California Plaintiffs and were highly likely to deceive members of the consuming public. Specifically, in deciding to purchase Coach Outlet Products, the California Plaintiffs relied on Coach's false, misleading, and deceptive representations regarding its MFSRPs and discounted prices. Each of these factors played a substantial role in the California Plaintiffs' decisions to purchase those products, and the California Plaintiffs would not have purchased those items or would not have paid as much for those items in the absence of Coach's misrepresentations. Accordingly, the California Plaintiffs suffered monetary loss as a direct result of Coach's pricing practices described herein.

115.    As a result of Coach's unfair acts and practices, the California Plaintiffs, members of the California Subclass, and the general public have suffered injury in fact and have lost money or property. These violations have unjustly enriched Coach at the expense of the California Plaintiffs and the California Subclass.

116.    Under Section 17203 of the Business & Professions Code, the California Plaintiffs and the other members of the California Subclass are entitled to (a) an injunction ordering Defendant to cease engaging in any acts of unfair competition and to engage in a corrective advertising campaign in compliance with all applicable laws; (b) restitution and disgorgement of all unjustly retained profits paid to Defendant; (c) equitable relief; (d) pre- and post-judgment interest at the highest rate allowable by law; and (e) payment of attorneys' fees and costs pursuant to Section 1021.5 of the California Code of Civil Procedure.

117.    THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT IV
### Violation of California False Advertising Law,
### Cal. Bus. & Prof. Code § 17500 *et seq.*
### (By the California Plaintiffs on Behalf of the California Subclass)

118.    The California Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

119.    The California Plaintiffs bring this claim for violation of the False Advertising Law, Bus. & Prof. Code § 17500 *et seq.* ("FAL"), on behalf of the California Subclass.

120.    The FAL makes it unlawful for a person, firm, corporation, or association to induce the public to buy its products by knowingly disseminating untrue or misleading statements about the products, including, but not limited to, false statements as to worth, value, and former price.

121.    Coach's practice of advertising the "MFSRP" on price tags, which were false and illusory, was an untrue and misleading advertising practice because it gave the false impression that the Coach Outlet Products were valued at more than what they received. In fact, the Coach Outlet Products did not have an actual or expected "MFSRP" because the products were always offered for sale at a lower price. Indeed, substantially similar products of higher quality were priced lower than Coach Outlet Products at Coach's mainline retail stores and other mainline retail stores.

122.    Coach's practice of advertising MFSRP prices associated with Coach products, which were materially greater than the true prevailing prices of those products, was an unfair, deceptive and misleading advertising practice because it gave the false impression that the products sold by Coach were regularly sold in the retail marketplace at substantially higher prices (and were, therefore, worth more) than they actually were.  In fact, the products sold at

Coach outlet stores did not have a prevailing market price anywhere close to the MFSRP advertised.

123.    Coach engaged in its advertising and marketing campaign with intent to directly induce consumers, including the California Plaintiffs and the California Subclass members, to purchase the Coach Outlet Products based on false and misleading claims.

124.    In making and disseminating the statements alleged herein, Coach knew or should have known the statements were untrue or misleading.

125.    Through its unfair acts and practices, Coach has improperly obtained money from the California Plaintiffs and members of the California Subclass. As such, the California Plaintiffs request that this Court cause Coach to restore this money to the California Plaintiffs and all members of the California Subclass, and enjoin Coach from continuing to violate the FAL as discussed herein and from violating the FAL in the future. Otherwise, the California Plaintiffs and other members of the California Subclass may be irreparably harmed or denied an effective and complete remedy.

126.    THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT V
### Violation of Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*
### (By the California Plaintiffs on Behalf of the California Subclass)

127.    Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

128.    Each of the California Plaintiffs and each member of the California Subclass is a "consumer" within the meaning of California Civil Code § 1761(d).

129.    Defendant is a "person" that sells "goods" to "consumers" within the meaning of Sections 1761(c), (a), and (d) of the Civil Code. Each individual purchase of the Coach Outlet Products constitutes a separate "transaction" under Section 1761(e) of the California Civil Code.

130.   As described herein, Coach violated the CLRA by representing and creating a false "MFSRP," and falsely representing the nature, existence, and amount of price discounts based on the false MFSRP. Such a pricing scheme is in violation of California Civil Code Section 1770(a)(7), which prohibits "representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" and California Civil Code Section 1770(a)(9), which prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

131.   The pricing scheme is also in violation of California Civil Code Section 1770(a)(13), which prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

132.   Coach's representations of a false MFSRP and false representations of purported savings, discounts, and bargains were material to California Plaintiffs in deciding to purchase Coach Outlet Products.

133.   The California Plaintiffs relied on Coach's false representations in deciding to purchase Coach Outlet Products. The California Plaintiffs would not have purchased Coach Outlet Products, or would not have paid as much as they did, absent Coach's unlawful conduct.

134.   Coach knew and knows that their conduct is deceptive and likely to mislead reasonable consumers, including California Plaintiffs and the California Subclass.

135.   Coach had a duty to affirmatively disclose that its MFSRP is false because it is not intended or expected to represent an actual retail price or retail value of any product.

136.   Coach failed to disclose that the Coach Outlet Products are not ever sold at the MFSRP advertised on their hangtags.

137.   Coach intended to engage in the deceptive or fraudulent acts of misrepresenting and omitting the false pricing scheme.

138.     As a direct and proximate result of Defendant's unlawful acts, the California Plaintiffs and all other members of the California Subclass have suffered and will continue to suffer damages. Pursuant to Section 1780(a)(2) of the California Civil Code, Defendant should be enjoined from continuing to employ the unlawful methods, acts, and practices alleged in this Complaint to prevent any future harm to the California Plaintiffs and the putative California Subclass.

139.     The California Plaintiffs, on behalf of themselves and all others similarly situated, seek an order requiring Defendant to pay nominal, actual, and statutory damages and restitution, and provide all relief set forth in California Civil Code Section 1780, including payment of attorneys' fees and costs.

140.     The California Plaintiffs, on behalf of themselves and all others similarly situated, seek equitable relief in the form of an Order prohibiting Defendant from engaging in the alleged misconduct described herein, as well as other relief, such as corrective advertising.

141.     The California Plaintiffs complied with California Civil Code Section 1782(a) and served preliminary notice letters to Coach by first-class certified mail with return receipt requesting that Coach correct, repair, or otherwise rectify the unlawful conduct identified herein before seeking damages under the CLRA.[17] As of the filing of this Complaint, more than 30 days have elapsed since Coach received the notice letters. As such, this Complaint now seeks damages under the CLRA.

142.     THEREFORE, Plaintiffs pray for relief as set forth below.

---

[17] Plaintiff Esparza's letter was sent on December 23, 2015 and was received by Coach, Inc., care of its registered agent for service of process, on December 29, 2015.  Plaintiff Rael's letter was sent on February 10, 2016. Plaintiff Hinkey's letter was received on June 10, 2016.

## COUNT VI
### Violation of the New Hampshire Consumer Protection Act,
### N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*
### (By Plaintiff Marino on Behalf of the New Hampshire Subclass)

143.    Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

144.    Plaintiff Marino brings this claim individually and on behalf of the other members of the New Hampshire Subclass.

145.    This cause of action is brought pursuant to the New Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*

146.    Coach is a "person" as defined by the CPA. *Id.* § 358-A:1(I). Coach is engaged in "trade" or "commerce" within the meaning of the CPA. *Id.* § 358-A:1(II).

147.    Section 358-A:2 of the CPA declares it "unlawful for any person to use any unfair methods of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce." *Id.* § 358-A:2. Specifically, the CPA lists, as a violation of the statute, "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." *Id.* § 358-A:2(XI). The same conduct that violates the California statutes violates the New Hampshire statute.

148.    Coach violated the CPA by engaging in, and continuing to engage in, unfair and deceptive practices and false advertising by representing a false and misleading "MFSRP" and corresponding reduced price representation for goods exclusively manufactured for sale at Coach outlets. As a result, the inflated "MFSRP" and corresponding reduced price was nothing more than a false, misleading, and deceptive price reduction.

149.    These acts and practices are unfair because they caused Plaintiff Marino, and are likely to cause consumers, to falsely believe Coach Outlets are offering price reductions from the

prevailing market value of the Coach Outlet Products which do not, in fact, exist. As a result, purchasers, including Plaintiff Marino, believed that the products were worth more and valued at more than what they received based on Coach's misrepresentation of the MFSRP value. This perception has induced reasonable purchasers, including the Plaintiff Marino and the New Hampshire Subclass, to buy Coach Outlet Products, which they otherwise would not have purchased, would not have paid as much for, or would not have paid a premium price for a luxury item.

150.    Under New Hampshire law, Coach's deceptive conduct attains a level of "rascality" that would disturb even someone inured to the rough and tumble world of commerce.

151.    The reasonable consumer relies on companies to represent honestly the price of their products and any associated price reductions.

152.    The damages suffered by Plaintiff Marino and the New Hampshire Class were directly and proximately caused by the deceptive, misleading and unfair practices of Coach, as described above.

153.    Pursuant to Sections 358-A:10 and 358-A-10-a, Plaintiff Marino and other New Hampshire Class members seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of the Coach and for restitution and disgorgement. *Id.* §§ 358-A:10, 358-A:10-a.

154.    Additionally, pursuant to Sections 358-A:10 and 358-A-10-a, Plaintiff and the Class make claims for damages, attorney's fees, and costs. *Id.*

155.    THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT VII
## Violation of State Consumer Statutes
## (On Behalf of Multi-State Class Members)

156.    Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

157.    By the early 1980s, every state and the District of Columbia had enacted consumer protection legislation, based upon model acts promulgated by the Federal Trade Commission ("FTC") and the National Conference of Commissioners on Uniform State Laws—originally referred to as "little" or "baby FTC acts."  These remedial statutes, now generally known as "UDAP" statutes, broadly prohibit unfair or deceptive acts and practices that harm consumers.  They outlaw deceptive and abusive marketing and advertising misconduct and provide private, state enforcement mechanisms to supplement the limited resources of federal authorities.

158.    Virtually every UDAP law in the nation traces its origin to the FTC Act, 15 U.S.C. § 45(a)-(m), or one of two contemporaneous model consumer acts that were developed and promulgated in the 1960s and recommended for adoption in 1970 by The Council of State Governments. All three models prohibit deceptive acts and practices aimed at consumers, including those at issue here.

> **Model Form 1** reads:  "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."
>
> **Model Form 2** reads:  "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."
>
> **Model Form 3** reads in pertinent part:  "The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful:
>
> * * *
>
>   (5)    representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or

41

that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

\* \* \*

(7)     representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; or

\* \* \*

(9)     advertising goods or services with intent not to sell them as advertised[.]"

159.    The same conduct described herein, which violates the Model acts and California and New Hampshire's consumer protection statutes, concomitantly violates the following states' consumer protection statutes:

(a)    **Connecticut:** Connecticut Gen. Stat. § 42-110b.
(b)    **Delaware:** Del. Code § 2513(a).
(c)    **Florida:** Fla. Stat. §  501.204(1).
(d)    **Hawaii:** Hawaii Rev. Stat § 480-2(a).
(e)    **Illinois:** 815 Ill. Comp. Stat. 505/2; 815 Ill. Comp. Stat. 510/2.
(f)    **Maine:** Me. Rev. Stat. Ann tit. 5 § 207.
(g)    **Massachusetts:** Mass. Gen. Laws Ann. 93A § 2.
(h)    **Michigan:** Mich. Comp. Laws Ann. § 445.903(3)(1).
(i)    **Minnesota:** Minn. Stat. Ann. § 325F.69, subd. 1; *id.* § 325D.44, subd. 1.
(j)    **Missouri:** Vernon's Ann. Mo. Stats. § 407.020.
(k)    **New Jersey:** N.J. Stat. Ann. § 56:8-2.
(l)    **New York:** N.Y. G.B.L. § 349(a).
(m)    **Ohio:** Ohio Rev. Code Ann. § 1345.02; Ohio Admin. Code 109:4-3-03; Ohio Rev. Code Ann. § 1345.03.
(n)    **Pennsylvania:** 73 Pa. Stat. § 201-3; *id.* § 201-2(4).
(o)    **Vermont:** Vt. Stat. Ann. tit. 9, § 2453.
(p)    **Virginia:** Va. Code Ann. § 18.2-216; Va. Code Ann. § 59.1-200.
(q)    **Washington:** Wash. Rev. Code Ann. § 19.86.020.
(r)    **West Virginia:** W. Va. Code Ann. § 46A-6-104; *id.* § 46A-6-102(7).
(s)    **Wisconsin:** Wis. Stat. Ann. § 100.18.

160.    Coach patrons who purchased Coach Outlet Products suffered the same or substantially similar injury and grievance as Plaintiffs (articulated above), as engendered by these consumer protection statutes.

161.    THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT VIII
### Fraud and Fraud by Omission
### (By Plaintiffs on Behalf of the Class)

162.   Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

163.   As detailed herein, Coach provided Plaintiffs and all other Class members with false or misleading material information and failed to disclose material facts about the Coach Outlet Products, including, but not limited to, the claims regarding the pricing of the Coach Outlet Products. These misrepresentations were made with knowledge of their inaccuracies, and Defendant's omissions were made with the knowledge that, without the material information, their pricing statements would be misleading.

164.   Defendant misrepresented that the MFSRP was a suggested retail price, when Defendant was both the manufacturer and retailer and never intended to sell products at the MFSRP.

165.   Defendant omitted that the MFSRP lacked any objective sales data to support it, i.e., that no product had ever been sold at the MFSRP. This information was material because consumers believe that the retail price or list price is the price at which those goods normally sell in the marketplace.

166.   The misrepresentations and omissions made by Coach, upon which Plaintiffs and the Nationwide Class members reasonably and justifiably relied, were intended to induce and actually did induce Plaintiffs and the Nationwide Class members to purchase the Coach Outlet Products.

167.   The fraudulent actions of Coach caused damage to Plaintiffs and all other Class members, who are entitled to damages and other legal and equitable relief as a result.

168.   THEREFORE, Plaintiffs pray for relief as set forth below.

43

**COUNT IX**
**Breach of Express Warranty**
**(By Plaintiffs on Behalf of the Nationwide Class)**

169.   Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

170.   Plaintiffs bring this claim individually and on behalf of the Class against Coach.

171.   Through their labeling of Coach Outlet Products, Coach provided the Class with written express warranties including, but not limited to, warranties that the MFSRPs were actual prices, and that Plaintiffs were receiving a price reduction.

172.   These representations became part of the basis of the bargain between Plaintiffs and Class members, on one hand, and Coach, on the other.

173.   Coach breached that warranty because the Coach Outlet Products were never sold or intended to be sold at the stated MFSRP—it is not an actual price. Instead, Coach never sold or intended to sell the Coach Outlet Products at the MFSRP, making the price reduction illusory.

174.   Coach made the above-described representations to induce Plaintiffs and Class members to purchase Coach Outlet Products and Plaintiffs and other Class members did so because they believed that MFSRP was a real price, signifying a discount in the purchase price.

175.   All conditions precedent to Coach's liability have been performed by Plaintiffs and all other Class members, who paid Coach to purchase Coach Outlet Products.

176.   Plaintiffs and all other Class members were harmed by Coach's breach of this express warranty because they were deprived of the benefit of their bargain. Plaintiffs and all other Class members did not receive the goods as warranted and suffered ascertainable loss of monies based on the purchase price of Coach Outlet Products or the price paid in excess of the discount Plaintiffs thought they were receiving, as a direct result of Coach's warranty. Alternatively, Plaintiffs and other Class members would not have purchased the Coach Outlet

Products had they known the MFSRP was not an actual price and they were not receiving a deal or discount.

177.    Plaintiffs therefore seek an order requiring Coach to make restitution to them and the Class.

178.    THEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT X**
**Unjust Enrichment**
**(By Plaintiffs on Behalf of the Class)**

179.    Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

180.    Plaintiffs assert this claim in the alternative to the above listed claims.

181.    Coach received from Plaintiffs and Class members a benefit, and was thereby enriched, in the form of entire purchases made and higher amounts paid in excess of the price they would have paid without Coach's misleading pricing conduct.

182.    Equity and good conscience require that Coach make restitution to Plaintiffs and Class members. Coach represented that the goods had a value pegged at the MFSRP, and that it was offering a discount off the MFSRP as the sale price. The MFSRP had no objective meaning, was not supported by any sales data, and was thus wholly illusory and constructed solely to create a false impression of higher value. Plaintiffs did not receive the discount or price reduction represented by Defendant, and thus paid a premium they would not have been willing to pay had they known the goods did not have the value, and were not being offered at the discount, Defendant represented. Under such circumstances, it would be unconscionable, inequitable, and unjust for Coach to retain these wrongfully obtained profits.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the Class, pray for relief as follows:

A.      An order that this action may be maintained as a class action under applicable law, that Plaintiffs be appointed Class Representatives, and that Plaintiffs' counsel be appointed as counsel for the Class;

B.      An award of statutory and actual damages as prescribed by the claims herein;

C.      An award of restitutionary and all other applicable equitable, including injunctive, relief as prescribed by the claims herein;

D.      An order prohibiting Defendant from continuing to violate the UCL, FAL, CLRA, and CPA as described herein;

E.      An order requiring Defendant to engage in corrective advertising;

F.      An award of attorneys' fees;

G.      An award of the costs of suit; and

H.      Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all claims so triable.

Dated: October 7, 2016                         Respectfully submitted,

                                               *s/David M. Cialkowski*
                                               David M. Cialkowski
Hannah P. Belknap                              June P. Hoidal
**ZIMMERMAN REED LLP**                         **ZIMMERMAN REED LLP**
2381 Rosecrans Ave., Suite 328                 1100 IDS Center
Manhattan Beach, CA 90245                      80 South 8th Street
Tel: 877.500.8780                              Minneapolis, MN 55402
hannah.belknap@zimmreed.com                    Tel:  612.341.0400
                                               david.cialkowski@zimmreed.com
                                               june.hoidal@zimmreed.com

***Attorneys for Plaintiff Esparza and the Proposed Class***

Matt Prewitt,
**CUNEO GILBERT & LADUCA, LLP**
16 Court Street, Suite 1012
Brooklyn, NY 11241
Tel: 202.789.3960
charles@cuneolaw.com

Jeffrey D. Kaliel
**TYCKO & ZAVAREEI LLP**
2000 L. Street, N.W., Suite 808
Washington, D.C. 20036
Tel: 202.973.0900
jkaliel@tzlegal.com

**MIRABELLA LAW, LLC**
Erica Mirabella
erica@mirabellallc.com
132 Boylston Street, 5th Floor
Boston, MA 02116
Tel: 855.505.5342

*s/Melissa W. Wolchansky*
Melissa W. Wolchansky
Charles D. Moore
**HALUNEN LAW**
1650 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Tel: 612.605.4098
wolchansky@halunenlaw.com
moore@halunenlaw.com

Jeffrey M. Ostrow
Scott Edelsberg
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
One West Las Olas Boulevard., Suite 500
Fort Lauderdale, FL 33301
Tel: 954.525.4100
ostrow@kolawyers.com
edelsberg@kolawyers.com

Charles J. LaDuca, Esquire
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, Suite 200
Washington, DC 20016
Telephone: 202 789 3960
charles@cuneolaw.com

*Attorneys for Plaintiff Marino and the Proposed Class*

Todd D. Carpenter
**CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP**
402 West Broadway, 29th Floor
San Diego, CA 92101
Tel: 619.347.3517
tcarpenter@carlsonlynch.com

*s/Edwin J. Kilpela*
Edwin J. Kilpela
**CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412.322.9243
ekilpela@carlsonlynch.com

*Attorneys for Plaintiff Rael and the Proposed Class*

_s/Richard D. Lambert_

Prescott W. Littlefield                     Richard D. Lambert
**KEARNEY LITTLEFIELD LLP**                 **STONEBARGER LAW**
3436 N. Verdugo Rd, Suite 230               75 Iron Point Circle, Ste. 145
Glendale, CA 91208                          Folsom, CA 95630
Tel: 213.473.1900                           Tel: 916.235.7140
pwl@kearneylittlefield.com                  rlambert@stonebargerlaw.com

**_Attorneys for Plaintiff Hinkey and the Proposed Class_**