USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/28/2017__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

MICHELLE MARINO, individually and on behalf of all others similarly situated,

                         Plaintiff,

                -against-

COACH, INC.,

                        Defendant.

16-CV-1122 (VEC)

------------------------------------------------------------------------X

MONICA RAEL, on behalf of herself and all others similarly situated,

                         Plaintiff,

                -against-

COACH, INC.,

                        Defendant.

16-CV-3773 (VEC)

------------------------------------------------------------------------X

DEBORAH ESPARZA, individually and on behalf of all others similarly situated,

                         Plaintiff,

                -against-

COACH, INC.,

                        Defendant.

16-CV-3677 (VEC)

------------------------------------------------------------------------X

CERA HINKEY, on behalf of herself and all others situated,

                         Plaintiff,

                -against-

COACH, INC.,

                        Defendant.

16-CV-5320 (VEC)

------------------------------------------------------------------------X

<u>OPINION AND ORDER</u>

VALERIE CAPRONI, United States District Judge:

Outlet malls dot the landscape attracting bargain seekers and tour busses. They have also attracted the attention of disgruntled shoppers and plaintiffs' attorneys who claim the outlets are not what they appear. Plaintiffs are four such shoppers. In this particular case they allege that Coach, Inc. ("Coach") uses deceptive marketing tactics to mislead consumers into believing that products sold at Coach outlet and factory stores (together "Coach Factory" stores and products) are deeply discounted, when, in fact, the goods are manufactured exclusively for Coach Factory stores and are not being sold at a discounted price at all. Plaintiffs bring ten statutory and common law claims on behalf of consumers nationwide for fraud, breach of express warranty, and unjust enrichment and violations of at least twenty state consumer protection statutes.

Taking an "everything but the kitchen-sink" approach, Coach has moved to dismiss on the grounds that Plaintiffs lack constitutional standing and class standing to assert claims on behalf of a nationwide class; that their claims are inadequately pleaded under Federal Rule of Civil Procedure 9(b); and that Plaintiffs have not alleged necessary elements of each of their causes of action, namely a cognizable injury, a material misstatement, or Coach's intent to deceive. For the reasons that follow, Coach's motion to dismiss is GRANTED IN PART and DENIED IN PART. Coach's motion to dismiss Plaintiffs' claim for injunctive relief is GRANTED WITH PREJUDICE. Coach's motion to dismiss Plaintiff Marino's claim under New Hampshire's consumer protection law and Plaintiffs' claims for common law fraud, unjust enrichment, and breach of express warranty are DISMISSED WITHOUT PREJUDICE. Coach's motion to dismiss is otherwise denied.

# BACKGROUND

Coach is a large retailer of luxury accessories. *See* Consol. Am. Compl. (Dkt. 37)[1] ("CAC") ¶ 30. In addition to its retail or "mainline" presence, Coach operates 204 outlet stores under the "Coach Factory" brand. CAC ¶ 33. The CAC alleges that Coach manufactures certain goods exclusively for sale in Coach Factory stores. These goods are identified by a style number beginning with "F," whereas mainline or retail products have five-digit style numbers with no letters. CAC ¶ 4. Some (or all) Coach Factory goods are marketed with an "MFSRP" or "Manufacturer's Suggested Retail Price." CAC ¶¶ 19-23. According to Plaintiffs, the MFRSPs are "illusory" because Coach Factory goods are never actually sold for the MFSRP. CAC ¶¶ 9-10.

Each of the four named plaintiffs visited Coach Factory stores between the "summer of 2014" and December 5, 2015. CAC ¶¶ 19-23. They allege that they purchased accessories – wristlets, sunglasses, and a handbag – and paid prices ranging between 40% and 70% less than the purported MFSRPs. CAC ¶¶ 19-23. Specifically, during the "summer of 2014," plaintiff Deborah Esparza ("Esparza") purchased a "black wristlet handbag in signature fabric, Style No. F64375," from a Coach Factory store in Cabazon, California. CAC ¶ 19. The wristlet was marked with a hangtag advertising an MFSRP of $65.00. CAC ¶ 19. Esparza paid "approximately $35 to $40." CAC ¶ 19. Plaintiff Monica Rael ("Rael") purchased a "handbag, Style No. F34614," from a Coach Factory store in Carlsbad, California. CAC ¶ 20. The handbag was marked with a hangtag advertising an MFSRP of $395.00. CAC ¶ 20. Rael paid $119.20. CAC ¶ 20. Plaintiff Cera Hinkey purchased a pair of sunglasses marked "IRMA (Coach L993)" from a Coach Factory store in Folsom, California in August 2014. CAC ¶ 21.

---

[1]     Unless otherwise specified, for convenience, the Court's references to the docket are to the lead action, No. 16-CV-1122 (VEC).

The sunglasses were marked with an MFSRP of $158.00. CAC ¶ 21. Hinkey paid $65.00. CAC ¶ 21. Plaintiff Michelle Marino bought a "wristlet," Style No. F51763 from a Coach Factory store in Merrimack, New Hampshire on November 29, 2014. CAC ¶ 23. The wristlet was advertised with an MFSRP of $78.00. Marino paid $40.00.

Plaintiffs allege that they understood the MFSRPs to be prices at which the Coach Factory goods were previously offered for sale. CAC ¶¶ 10, 16 (Plaintiffs "believed that the price tags attached to the products purchased at [Coach Factory stores] signified a former price at which the products were sold in the marketplace."). The CAC alleges that the MFSRPs are fictitious and intended to entice bargain-hunters with the appearance of a discount. CAC ¶¶ 58-60. Consumers like Plaintiffs, who believe the MFSRPs represent former prices, think they have scored a substantial discount. CAC ¶ 14. In truth, however, Coach Factory items are never sold or intended to be sold for the MFSRP. CAC ¶¶ 6, 40, 53.

According to Plaintiffs, the MFSRPs also create a "false impression of quality." CAC ¶ 40. Consumers base their expectations for the quality of Coach Factory products on their MFSRPs, rather than on the lower, actual prices at which the products are offered for sale.[2] CAC ¶¶ 37, 53-54. This mistaken impression of quality is enhanced by comparison to Coach retail products and prices. Plaintiffs allege that at least some of Coach's factory-only products are designed to appear similar to Coach goods sold in retail stores. CAC ¶¶ 46-52. By marketing these factory-only products with MFSRPs equivalent to or higher than the prices of similar retail

---

[2] Coach appears to confirm that the MFSRPs are intended to give an impression of quality. According to a declaration submitted by Coach in support of its motion to dismiss, disclaimers posted in Coach Factory stores state that the MFSRPs are "an indication of value based on the quality of the material used, our commitment to craftsmanship and the high standards demanded by Coach." Decl. of Adrianne Kirszner (Dkt. 43) ("Kirszner Decl.") ¶ 4.

goods, Coach leads consumers to believe that the factory-only goods are equivalent in quality to the similarly-styled retail goods.[3]  *See* CAC ¶¶ 48, 50, 52.

For example, the CAC includes a side-by-side comparison of the Coach Factory "Phoebe" handbag (style number F35723) and the visually similar "Edie" bag sold in Coach retail stores (style number 36464).  CAC ¶¶ 42, 46-49.  The Phoebe bag is sold in Coach Factory stores with a hangtag showing an MFSRP of $395, while the Edie bag is sold in retail stores for $325.  CAC ¶¶ 48.  According to Plaintiffs, consumers viewing the two similar bags base their expectations for the quality of the Phoebe bag on its similarity to the Edie.  But, Plaintiffs explain, the Phoebe bag is actually of lesser quality; unlike the Edie, the Phoebe has multiple seams, indicating that it is made from "fabric remnants" rather than a larger, more desirable, single piece of fabric.  CAC ¶ 49.

Plaintiffs bring ten causes of action in total.  On behalf of a nationwide class, Plaintiffs assert claims for common law fraud, breach of express warranty, and unjust enrichment under New York law.  On behalf of a subclass of California consumers, Plaintiffs assert claims under California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, California's False Advertising Law (the "FAL"), Cal. Bus. & Prof Code § 17500 *et seq.*, and California's Consumers Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1750 *et seq.*  On behalf of a subclass of New Hampshire consumers, Plaintiffs bring a claim for violations of New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*  And, on behalf of a "multi-state" class of consumers (the "Multi-State Subclass"), plaintiffs allege violations of the consumer protection statutes of 18 other states.

Coach has moved to dismiss.

---

[3]     Implicitly, the CAC alleges that consumers associate higher prices with higher quality.

**DISCUSSION**

## 1.     Constitutional Standing

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)). Article III requires a plaintiff to establish an injury in fact, a causal connection between the injury and the conduct complained of, and that the injury will likely be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014). "But 'where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Id.* (quoting *APWU v. Potter,* 343 F.3d 619, 627 (2d Cir. 2003)). "A plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).

### A.     Individual Claims

Relying on *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540 (2016), Coach argues that Plaintiffs have not pleaded an "injury in fact." According to Coach, the CAC alleges, at best, bare procedural violations that do not amount to cognizable injury under Article III. *See Spokeo, Inc.*, 136 S. Ct. at 1549-50 (reversing and remanding for the lower courts to consider in the first instance whether plaintiff alleged a procedural violation that "entail[ed] a degree of risk

sufficient to meet the concreteness requirement" of Article III).  Coach also argues that Plaintiffs do not have standing to seek injunctive relief because they are now aware of Coach's deceptive practices and therefore face no "actual or imminent" risk of being deceived in the future.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (quoting *Lujan*, 504 U.S. at 564).

Coach's "injury-in-fact" argument has been rejected in similar outlet-pricing cases.  As Judge Oetken recently explained in *Morrow v. Ann Inc.*:  "Plaintiffs allege that they would not have bought the products absent Ann's advertising, which caused them to spend money they would otherwise not have spent.  This injury is concrete, and while it may ultimately prove insufficient to justify relief under the statutes at issue, it is sufficient to confer constitutional standing."  No. 16-CV-3340 (JPO), 2017 WL 363001, at *5 (S.D.N.Y. Jan. 24, 2017); *see also id.* at *3 n.4 (explaining that the Ninth Circuit rejected the same argument in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2014)); *Morrow v. Carter's, Inc.*, No. 16-CV-01485-ELR, Slip Op. at 8-9 (N.D. Ga. Mar. 6, 2017) (rejecting the same argument and finding that plaintiffs adequately allege Article III injury).  The Court agrees.  Plaintiffs' allegations that the MFSRPs caused them to purchase products that they believed "had a higher value than they actually did," CAC ¶ 66, is adequate to allege "injury in fact" under Article III.  *See also* CAC ¶ 14 ("Plaintiffs would not have made [their] purchases, or would have paid less than they did, but for Coach's representations and fraudulent omissions").  Coach's argument is otherwise an improper attempt to litigate the merits of Plaintiffs' claims under the guise of a jurisdictional attack.  *See Chester v. TJX Cos.*, No. 5:15-cv-1437-ODW(DTB), 2016 WL 4414768, at *6 (C.D. Cal. Aug. 18, 2016) (rejecting the same argument because "at the crux of Defendants' jurisdictional argument sits the merits of this case").

While Plaintiffs satisfy Article III's requirement of an "injury in fact," they do not satisfy Article III's requirements to seek injunctive relief. A plaintiff seeking injunctive relief cannot rely on past injury; in order to satisfy Article III's injury requirement the plaintiff must allege a likelihood of future harm. *Harty v. Simon Property Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). "The named plaintiffs in a class action must themselves have standing to seek injunctive relief." *Spiro v. Healthport Tech., LLC*, 73 F. Supp. 3d 259, 271 (S.D.N.Y. 2014) (quoting *Dodge v. Cnty. of Orange*, 103 F. App'x 688, 690 (2d Cir. 2004)). Plaintiffs have not alleged that they intend to purchase products from Coach Factory stores in the future. Even if they had, now that they know that the MFSRPs are not former prices, they cannot be misled. Rather, Plaintiffs' claim for injunctive relief is based entirely on their past injuries and the potential that other consumers might be deceived in the future.

The Second Circuit's recent decision in *Nicosia v. Amazon.com*, 834 F.3d 220 (2d Cir. 2016)*, is dispositive.[4] In *Nicosia*, the plaintiff purchased a diet drug containing a dangerous substance, sibutramine, from the on-line retailer Amazon.com. Plaintiff sued on behalf of a putative class, seeking, among other things, an injunction to prevent Amazon from selling other diet drugs containing the same substance, which Amazon continued to offer for sale. *Id.* at 226, 239. The Second Circuit held that Nicosia did not have Article III standing. Nicosia could not show a "real or immediate threat" of future injury because he had failed to show that "he intends to use Amazon in the future to buy *any* products, let alone . . . weight loss products in particular." *Id.* at 239.

---

[4] Plaintiffs seek injunctive relief to the extent available for each of their claims and not solely in respect of their claims under California law. In any event, whether Plaintiffs have Article III standing to seek injunctive relief is a question of federal, not state, law.

Although a consumer protection law was not at issue in *Nicosia,* the Court's holding did not rest on the statutory basis of the plaintiff's claim, but on the bare minimum that is required under the Constitution to pursue a claim for injunctive relief in federal court.  Because these Plaintiffs, like Nicosia, are pursuing injunctive relief based solely on past purchases, like Nicosia, they lack Article III standing.  *See Buonasera v. The Honest Co.*, 208 F. Supp. 3d 555, 564-65 & n.3 (S.D.N.Y. 2016); *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *5-7 (E.D.N.Y. 2016) (consumers lack standing to seek injunctive relief for past injuries, relying in part on *Nicosia*).

Courts that have permitted plaintiffs to seek injunctive relief under similar circumstances have done so for public policy reasons.  *See Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWX), 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011) (preventing plaintiffs from seeking injunctive relief would "surely thwart the objective of California's consumer protection laws"); *Belfiore v. Procter & Gamble, Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (citing *Henderson* and holding that "[p]ublic policy, as well as precedent" suggest that plaintiffs may seek injunctive relief).

However well intentioned those decisions, they appear to confuse whether a plaintiff has Article III standing to sue in federal court with whether the purposes of the state law would be furthered by permitting plaintiffs to seek injunctive relief.  *See Campion v. Old Republic Home Prot. Co.*, 861 F. Supp. 2d 1139, 1149 (S.D. Cal. 2012); *Taylor v. Nike Inc.*, No. 16-cv-00661-MO, 2017 WL 663056, at *2-3 (D. Or. Feb. 17, 2017).  To the extent seeking injunctive relief is important to Plaintiffs to protect other would-be bargain seekers, they are free to pursue their claim in state court.  For that reason, it is simply not true that a holding that plaintiffs lack standing to seek injunctive relief in federal court "eviscerates" the injunctive relief provisions of

state law. *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012). Injunctive relief remains available to similarly situated plaintiffs in state court. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951-52 (S.D. Cal. 2007) ("If this Court lacks jurisdiction to enjoin Defendants . . . , consumers in Plaintiff's position may yet be able to split their claim and seek injunctive relief in state court.").

The Court finds that Plaintiffs lack standing to seek injunctive relief because they do not allege any actual or imminent risk of future injury.

### B. Class Standing

Assuming Plaintiffs have standing to sue for their individual injuries, Coach argues that they have no standing to bring claims on behalf of the Multi-State Subclass because Plaintiffs do not personally possess claims under the consumer protection laws of any other state and therefore do not have class standing to pursue such claims on behalf of absent class members. *See* Mem. at 8. "[C]ourts in this Circuit are divided on the precise question at issue here: whether a named plaintiff in a putative class action can assert claims under state laws other than those of the states where they themselves suffered injury." *Morrow*, 2017 WL 363001, at *5 (collecting cases). Nonetheless there is a "growing consensus" that it is appropriate to defer consideration of standing until after class certification if class certification may affect the Court's standing analysis. *Kaatz v. Hyland's Inc.*, No. 16-CV-237 (VB), 2016 WL 3676697, at *4 (S.D.N.Y. July 6, 2016) (quoting *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012)). Whether Plaintiffs have standing to bring claims on behalf of the members of the Multi-State Subclass depends on what law applies to the absent class members' claims and whether the injury recognized by those laws is sufficiently similar to Plaintiffs' injury that class treatment is appropriate. *See In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, No. 06-MD-1739

(SWK), 2006 WL 3039993, at *3 n.3 (S.D.N.Y. Oct. 25, 2006); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 406-07 (S.D.N.Y. 2011) (deferring standing decision because commonality and typicality are critical to whether named plaintiffs may bring claims on behalf of absent class members under other state laws). This analysis is part and parcel with the commonality and typicality analysis under Federal Rule of Civil Procedure 23. And, if the Court declines to certify a class, there will be no need to address standing. *See Kaatz*, 2016 WL 3676697, at *5. The Court defers consideration of class standing until after class certification. *See Morrow*, 2017 WL 363001, at *6.

## 2. Rule 9(b)

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A heightened pleading standard applies to claims sounding in fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To plead the circumstances constituting fraud with particularity, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)). To plead malice, intent, or knowledge "generally" means that "'the general 'short and plain statement of the claim' mandate in Rule 8(a) . . . should control the second sentence of Rule 9(b).'" *Iqbal,* 556 U.S. at 687 (quoting C. Wright & A. Miller, 5A Federal Practice and Procedure § 1301, at 291 (3d ed. 2004)).

Coach argues that the CAC fails to satisfy Rule 9(b) in two ways.[5]  First, Coach argues

that the CAC is missing necessary allegations regarding Plaintiffs' purchases.  For instance, the

CAC does not allege the exact price Esparza paid for her Coach Factory wristlet, *see* CAC ¶ 19

("Esparza's recollection is that she paid approximately $35 to $40"), or the exact date on which

she made her purchase, *see* CAC ¶ 19 (Esparza purchased the wristlet "during the summer of

2014").  According to Coach, the CAC does not allege the sale price of the purchased goods or

specify their percentage discount.  Second, Coach argues that Plaintiffs have not adequately

alleged how or why the MFRSPs are deceptive.  Mem. at 11-12.

The Court finds that Plaintiffs have alleged their purchases in sufficient detail to satisfy

Rule 9(b).  Each of the four named Plaintiffs alleges the critical facts necessary for Coach to

defend against their claims, including the style number for each item purchased, the location at

which the item was purchased, the approximate date of the purchase, the advertised MFSRP, and

that they paid less than the MFSRP.  *See* CAC ¶¶ 19-23.  Given the inclusion of style numbers,

the Court finds perplexing Coach's insistence that the CAC lacks "any meaningful details about

what plaintiffs bought."  Mem. at 11.  The style numbers explain how Plaintiffs know the goods

were sold exclusively at Coach Factory stores – the style numbers for three of the four items

begin with "F" – and provide Coach with information that can be easily cross-checked against its

internal catalog and sales reports.  *See Stathakos v. Columbia Sportswear Co.*, No. 15-cv-4543-

YGR, 2016 WL 1730001, at *3 n.5 (N.D. Cal. May 2, 2016) (reference-pricing complaint

satisfies Rule 9(b), where among other things, it "listed the product codes and descriptors" of the

items purchased); *Pickles v. Kate Spade and Co.*, No. 15-cv-5329-VC, 2016 WL 3999531, at *1

(N.D. Cal. July 26, 2016) (concluding that plaintiffs satisfied Rule 9(b) because they alleged that

---

[5]      Plaintiffs do not dispute that Rule 9(b) applies to their common law fraud claim and their claims under the California and New Hampshire consumer protection laws.

Defendant "use[d] unique 4-letter product codes to identify merchandise that it manufactures exclusively for sale at its outlet stores."). "Rule 9(b) does not call for Plaintiffs to plead every conceivable fact about the claims they allege were fraudulent, or to prove its claims at the pleading stage. Rather, 'the purpose of Rule 9(b)'s specificity requirement is to provide the defendant with fair notice of a plaintiff's claim and adequate information to frame a response.'" *United States ex rel. Forcier v. Comput. Sci. Corp.*, 183 F. Supp. 3d 510, 521 (S.D.N.Y. 2016) (quoting *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 615 (S.D.N.Y. 2013)). The CAC meets this standard. The additional details demanded by Coach can be the subject of discovery.

Coach's argument that the "how" and "why" of the fraud are inadequately alleged has more merit. There are two theories of deception in this case. Plaintiffs' more straightforward theory of deception is that MFSRPs – "Manufacturers' Suggested Retail Prices" – are deceptive because consumers understand them to represent former prices. The CAC alleges clearly the "how" of this fraud: consumers believe the MFSRPs are former prices; and the "why" of this fraud: the MFSRPs are fake because Coach never sells these items for those prices. *See* CAC ¶¶ 5-6, 10, 15-16. This theory is adequately pleaded.

Plaintiffs' more nuanced theory of deception is that Coach designs outlet-only goods that appear similar to retail products and tags the outlet-only products with MFSRPs that are similar to the prices of the retail goods. CAC ¶¶ 40-54. Consumers see the similar outlet-goods, with similar MFSRPs, and believe they are buying products of similar quality to the similar retail products.[6] CAC ¶¶ 49-50, 52-54. The CAC does not adequately allege the "how" or "why" of

---

[6]     Coach's own disclaimers appear to reinforce this impression in part. According to Coach, it posts disclaimers in Factory stores that explain that the MFSRPs are "an indication of value based on the quality of the material used, our commitment to craftsmanship and the high standards demanded by Coach." Kirszner Decl. ¶ 4.

this product-confusion theory. The CAC includes as examples of allegedly confusing retail and outlet goods: an outlet-only handbag known as the "Phoebe," which is allegedly similar to a mainline bag called the "Edie;" and certain Coach wristlets, that are similar in their retail and outlet versions. *See* CAC ¶¶ 43-49, 52 (noting similarity between Coach Factory wristlets *similar* to the one purchased by Esparza and mainline goods). Plaintiffs do not allege, however, that they purchased the "Phoebe" bag or any of the wristlets that are similar to Coach retail wristlets. The CAC does not identify any Coach mainline products – or family of products – to which Plaintiffs believed the outlet goods that they purchased were similar. Thus, as currently drafted, the CAC does not adequately allege the "how" of this deception. If Plaintiffs intend to proceed on this theory, they must amend their complaint to identify the retail goods that are deceptively similar to the outlet goods that the Plaintiffs actually purchased.[7]

### 3. New Hampshire Claims

Plaintiff Marino's statutory claim arises under New Hampshire law. New Hampshire's Consumer Protect Act ("CPA") prohibits, *inter alia*, "representing that goods or services are of a particular standard, quality or grade, . . . if they are of another" and "making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." N.H. Rev. Stat. Ann. § 358-A:2 (VII and XI). Relying on cases interpreting Massachusetts's similar consumer protection law,[8] Coach argues that Marino has not suffered an actual injury

---

[7]    As explained below, Plaintiffs' claims under New Hampshire's consumer protection law and for fraud and unjust enrichment under New York law will rise and fall with these allegations.

[8]    Neither party identifies the elements of a claim under the New Hampshire CPA. Nonetheless, Plaintiffs do not contest that injury, a material misrepresentation, and intent are elements of a claim under the New Hampshire CPA. Both parties also agree that the New Hampshire CPA is similar to the Massachusetts consumer protection law and rely on cases interpreting Massachusetts law. *See* Mem. at 16 n.11 (Massachusetts CPA is "virtually identical"), Opp'n (Dkt. 22) at 22 (relying on cases decided under Massachusetts law); *see also Gallagher v. Funeral Source One Supply and Equip. Co.*, No. 14-cv-115-PB, 2015 WL 773737, at *4 (D.N.H. 2015) ("the New Hampshire Supreme Court has sometimes turned to Massachusetts courts for guidance when faced with an interpretative question regarding the CPA because the Massachusetts consumer protection statute is similar to the CPA").

because she has not alleged that she purchased an item that was worth less than she paid. Mem. at 15-16. Marino believed that she was paying $40.00 for a certain Coach Factory wristlet and she received a Coach Factory wristlet worth $40.00. Alternatively, Coach argues that the CAC does not allege a false or misleading statement. Mem. at 22. The CAC does not allege that Coach has ever described the MFSRPs as former prices and, according to Coach, a reasonable consumer could not believe that the MFSRPs represent former prices. And finally, Coach argues that the CAC does not plausibly allege that Coach acted knowingly or recklessly. Mem. at 24. The Court addresses these arguments in turn.

This Court has had occasion to address Coach's injury argument recently. In *Belcastro v. Burberry Ltd.*, the Court considered whether a consumer who alleges that she would not have purchased an item but for the appearance of a discount alleges plausibly injury under New York's consumer protection statute. No. 16-CV-1080 (VEC), 2017 WL 744596 (S.D.N.Y. Feb. 23, 2017). The Court explained that New York law has been interpreted to require an injury beyond subjective disappointment in not receiving a bargain. *See Id.* at *4. Massachusetts law has been interpreted similarly. *See Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 51-52 (D. Mass. 2015). Consumers who allege only that they would not have purchased an item but for a false markdown do not suffer an actual injury because they do not allege that they overpaid for the product or that they were misled as to the intrinsic qualities of the product. As the *Shaulis* court explained in connection with that plaintiff's purchase of a sweater:

> The injury that plaintiff claims to have suffered is not an "injury" in any traditional sense of the word. She paid $49.97 . . . . But it appears that she paid $49.97 for a sweater that is, in fact, worth $49.97. . . . [T]he fact that plaintiff may have been manipulated into purchasing the sweater because she believed she was getting a bargain does not necessarily mean she suffered economic harm: she arguably got exactly what she paid for, no more and no less.

*Id.* at 51-52. The *Shaulis* decision was affirmed recently by the First Circuit. *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, (1st Cir. 2017).

Assuming Marino is able to amend her complaint as discussed *supra*, she may be able to allege injury that is distinguishable from the ephemeral injury alleged in *Shaulis* and *Belcastro*. Unlike in those cases, Marino alleges that Coach's MFSRP caused her to believe that she was purchasing an item of higher quality than she allegedly received. The CAC alleges that the MFSRPs "create[] a false impression of quality and value," in part because "higher end versions of outlet items sell at Coach's mainline stores for a list price *less* than the MFRSP on display at the outlet." CAC ¶ 40. Consumers, like Marino, viewing the MFSRPs, may believe that they are purchasing an item that is of the same or similar quality as visually similar products sold in Coach retail stores. If Plaintiffs can make such allegations, they may be able to connect Coach's alleged misrepresentation to an injury they suffered relative to being misled about the quality of the product.[9]

The Court also finds that Marino has plausibly alleged that the MFSRPs are misleading. Relying chiefly on an out-of-circuit opinion that has since been reversed on appeal, Coach argues that a reasonable consumer could not be misled into believing that the MFSRPs are former prices. *See* Mem. at 22 (citing to *Rubenstein v. The Neiman Marcus Grp. LLC*, Case No. CV 14-07155 SJO, 2015 WL 12552038 (C.D. Cal. May 12, 2015), *rev'd* __ F. App'x __, 2017 WL 1381147 (9th Cir. Apr. 18, 2017). In support of this argument, Coach notes that disclaimers in its stores explain that the MFSRPs are intended to be indicators of "value." Mem. at 23. Whether, in the face of such disclaimers, a reasonable consumer could nonetheless believe that

---

[9] Marino's theory that the MFSRPs led her to believe that she was receiving a bargain is indistinguishable from the illusory injury rejected by this Court in *Burberry* and by the New York Court of Appeals in *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56-57 (1999). Although this theory of deception is viable under California law, it is insufficient to allege an actual injury under New York law.

the MFSRPs are former prices is an issue of fact to be resolved at a later stage of this litigation, as is the significance of Coach's disclaimers. *See Rubenstein*, 2017 WL 1381147, at *2 (reversing district court's dismissal and explaining that "[w]here, as here, the reasonable consumer test applies . . . , it is a 'rare situation in which granting a motion to dismiss is appropriate.'" (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008))). Additionally, and as Plaintiffs note, Coach's argument in this regard relies heavily on cases involving so-called "compare at" advertising, not MFSRPs. *See, e.g.*, *Rubenstein*, 2015 WL 12552038, at *5; *Branca v. Nordstrom, Inc.*, No. 14cv2062-MMA, 2015 WL 1841231 at *7 (S.D. Cal. Mar. 20, 2015) (dismissing without prejudice claim that consumer believed that "compare at" tags represented former prices and relying on *Rubenstein*); *Jacobo v. Ross Stores, Inc.*, No. CV-15-04701-MWF, 2016 WL 3482041, at *4-5 (C.D. Cal. Feb. 23, 2016). Unlike "compare at" advertising, MFSRPs – "Manufacturer's Suggested Retail *Prices*" – allude directly to a price for the item, which makes it more plausible that a reasonable consumer could believe that the MFSRP on the hangtag represents a former price. The Court finds that Marino has adequately alleged a misrepresentation.

The Court also rejects Coach's argument that the CAC does not plausibly allege intent. According to Plaintiffs, Coach markets products with MFSRPs knowing that the merchandise will never be sold for the MFSRP and that consumers believe that the MFSRPs represent former prices. *See* CAC ¶¶ 41, 59, 67. The CAC supports this allegation with facts tending to show that Coach has control over the sales of Coach Factory merchandise and that Coach Factory merchandise is sold exclusively at Coach Factory stores. *See* CAC ¶¶ 58-59. At this stage, Plaintiffs are not required to allege anything more. *See Branca v. Nordstrom, Inc.*, No. 14cv2062-MMA, 2015 WL 10436858, at *8 (S.D. Cal. Oct. 9, 2015) (rejecting argument that

plaintiff inadequately alleged intent, where consumer alleged that retailer intended consumers to believe that "compare at" prices were former prices).

### 4.     Plaintiffs' California Claims

Plaintiffs assert claims under California's consumer protection, false advertising, and unfair business practices statutes. For the reasons already given, the Court rejects Coach's argument that Plaintiffs' California claims fail because they have not alleged a material misrepresentation, intent, or that a reasonable consumer would find the MFSRPs misleading. These arguments are repackaged versions of the same arguments the Court has rejected in connection with Marino's New Hampshire CPA claims. In addition to these arguments, Coach contends that Plaintiffs may not recover restitution under California law because they do not allege that they paid more than the true value of the Coach Factory products.[10]  *See* Mem. at 26.

California law provides for restitution "as may be necessary to restore any person . . . any money or property . . . , which may have been acquired by means of [] unfair competition." Cal. Bus. & Prof. Code § 17203. The FAL and CLRA also provide for restitution. *See Spann v. J.C. Penney Corp.*, No SA CV 12-0215 FMO, 2015 WL 1526559, at *3 (C.D. Cal. Mar. 23, 2015). As the *Spann* court explained, restitution under California law may be calculated in terms of "*either* the dollar value of the consumer impact *or* the advantage realized by defendant . . . ." *Id.* at *5. Thus, the fact that Plaintiffs may have purchased items that are worth what they paid does not mean that they cannot state a claim for restitution. Plaintiffs will have the burden of proving

---

[10]     Coach also argues that Plaintiffs cannot state a claim under the California UCL's "unlawful" prong because they have not alleged a violation of a predicate statute. *See* Mem. at 26-27. The Court need not address this argument because, regardless, Plaintiffs have plausibly alleged a claim under the UCL's "fraud" prong.

a viable method to calculate restitution at a later stage of the litigation, but they need not do so in response to a motion to dismiss.[11]

### 5.  Common Law Fraud

In order to state a claim for fraud under New York law, Plaintiffs must allege "(a) a material misrepresentation or omission of fact; (b) defendant's knowledge of the falsity of the statement; (c) intent to defraud; (d) reasonable reliance by the plaintiff; and (e) damage to the plaintiff." *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, __ F. Supp. 3d __, 2017 WL 1207836, at *4 (S.D.N.Y. Mar. 31, 2017).  Coach argues that the CAC does not allege a material misstatement, intent, reasonable reliance, or injury.  Mem. at 28-29.  The Court has already addressed these arguments in connection with Marino's claim under New Hampshire law.  Like New Hampshire law, New York law requires an injury in terms of the price or quality of the product.  *See Belcastro*, 2017 WL 744596 at *4.  In order to allege such an injury with particularity, Plaintiffs must amend their complaint to allege to what retail goods they confused the outlet-only products they purchased.  *See supra* at 13-14.  The Court otherwise rejects Coach's arguments that the CAC does not allege a material misstatement, intent, and reliance for the reasons already given.

### 6.  Unjust Enrichment

In order to state a claim for unjust enrichment under New York law, a plaintiff must allege that: "'(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" *Coach, Inc. v. Horizon Trading USA, Inc.*, 908 F. Supp. 2d 426, 436 (S.D.N.Y. 2012) (quoting

---

[11]    Coach argues in a footnote that Plaintiffs have not stated a claim under the California FAL.  *See* Mem. at 28 n.18.  The Court will not consider arguments raised entirely by footnote, especially because the Court granted the parties' request for an extension of the page limits otherwise applicable to Coach's motion to dismiss.  *See Levy v. Young Adult Institute, Inc.*, 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015) (refusing to consider arguments raised entirely in footnotes).

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 544 (S.D.N.Y. 2012)).

Coach moves to dismiss on the well-worn grounds that Plaintiffs have not alleged an actual injury. Alternatively, Coach argues that Plaintiffs' purchases constitute contractual agreements and, under New York law, a party to a binding contract may not recover for unjust enrichment. *See Goldstein v. CIBC World Mkts. Corp.*, 776 N.Y.S. 2d 12, 14 (1st Dep't 2004). The parties assume that the "actual injury" requirement applicable to fraud claims under New York law also applies to unjust enrichment claims. *Compare* Mem. at 29; Opp'n at 32. In order to state a claim for unjust enrichment, a plaintiff must allege that the benefit he or she received – here the Coach Factory products – was not what was bargained for. *See Smith v. Chase Manhattan Bank, USA, N.A.*, 741 N.Y.S.2d 100, 102-03 (2d Dep't 2002). To the extent Plaintiffs' theory is that they bargained for retail-quality goods, this claim is inadequately pleaded for the reasons already discussed *supra.* Assuming Plaintiffs can amend their complaint to cure this deficiency, the Court rejects Coach's argument that Plaintiffs' purchases preclude a claim for unjust enrichment. While Plaintiffs ultimately may not be able to recover on an unjust enrichment theory, New York law permits a plaintiff to plead unjust enrichment in the alternative. *See Loheac P.C. v. Children's Corner Learning Center*, 857 N.Y.S.2d 143 (1st Dep't 2008) (plaintiff may allege breach of contract and unjust enrichment alternatively).

7.      **Express Warranty**

Finally, Coach moves to dismiss Plaintiffs' express warranty claim. Coach argues that Plaintiffs have not alleged any express misrepresentation about the goods. As Coach puts it, at best, the MFSRPs are "implicit" warranties of a former price. Mem. at 30. The Court agrees. Under California law, an express warranty "is a contractual term relating to the title, character, quality, identity or condition of the sold goods." *Blennis v. Hewlett-Packard Co.*, 2008 WL

818526, at *2 (N.D. Cal. 2008); *see also* Cal. Com. Code. § 2313(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.").  New York and New Hampshire law are similar.[12]  *See* N.Y. U.C.C. Law § 2-213 ("[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise"); N.H. Rev. Stat. Ann. § 382-A:2-313(1)(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.").  Plaintiffs argue that the MFSRPs are express warranties of product quality, but the only paragraph of the CAC cited by Plaintiffs in support this argument is the generalized allegation that "status-conscious consumers tend to use a price cue also as a surrogate indicator of prestige" and that the "price of a product plays an important role in creating their perception of the good's higher quality."  CAC ¶ 34; Opp'n at 33.  All of that  may be true, but an inference that the Coach Factory products are of better quality than they actually are is too vague and general to be actionable as an express warranty of anything related to the actual goods.  *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1018 (N.D. Cal. 2014) (explaining that express warranties must be "specific and unequivocal" and may not be vague statements) (quoting *Smith v. LG Elec. USA, Inc.*, No. 13-cv-4361-PJH, 2014 WL 989742, at *4 (N.D. Cal. Mar. 11, 2014)); *In re Scotts EZ Seed Litig.*, No. 12-CV-4727 (VB), 2013 WL 2303727, at *6-7

---

[12]     Coach argues that California, New York, and New Hampshire law are similar.  Mem. at 30.  Plaintiffs do not challenge the point.

(S.D.N.Y. May 22, 2013) (distinguishing between non-actionable generalized claims of quality and specific representations of fact regarding product's quality).[13]

## CONCLUSION

Coach's motion to dismiss is DENIED IN PART and GRANTED IN PART.  Plaintiffs' claim for injunctive relief is DISMISSED WITH PREJUDICE.  Marino's claim under the New Hampshire CPA is DISMISSED WITHOUT PREJUDICE.  Plaintiffs' claims for common law fraud, unjust enrichment, and breach of express warranty are DISMISSED WITHOUT PREJUDICE.  The motion to dismiss is otherwise denied in all respects.

Should Plaintiffs choose to amend to cure the deficiencies in the CAC identified *supra*, their second consolidated amended complaint is due by **September 18, 2017**.  The parties are directed to appear for a status conference at **10:00 a.m. on September 29, 2017**.  The parties' joint pre-conference letter and proposed case management plan is due by **September 21, 2017**.

The Clerk of the Court is respectfully directed to close the following open motions: in case no. 16-cv-1122, docket entries 40 and 54; in case no. 16-cv-3773, docket entries 29 and 40; in case no. 16-cv-3677, docket entries 54 and 65; and in case no. 16-cv-3520, docket entries 18 and 29.

**SO ORDERED.**

**Date:  August 28, 2017**
**New York, New York**                          **VALERIE CAPRONI**
                                                **United States District Judge**

---

[13]     Plaintiffs' opposition relies on the disclaimer posted in Coach Factory stores as an express warranty as to the quality of Coach Factory products.  Opp'n at 33.  Even assuming such a representation would qualify as a "specific and unequivocal" representation regarding the quality of any given item purchased in the Factory store, this theory is not alleged in the CAC.