i655marA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MICHELLE MARINO, *et al*,

             Plaintiffs,            New York, N.Y.

      v.                      16 Civ. 1122 (VEC)

COACH, INC.,,

             Defendant.
------------------------------x

                                      June 5, 2018
                                      3:00 p.m.

Before:

               HON. VALERIE E. CAPRONI,

                                District Judge


                       APPEARANCES

HALUNEN LAW
    Attorneys for Plaintiffs
BY:  CHRISTOPHER J. MORELAND

KIRKLAND & ELLIS, LLP
    Attorneys for Defendant
BY:  AARON H. MARKS
       -and-
KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP (NYC)
BY:  KEVIN A. CYRULNIK
     CYNTHIA JORDANO

i655marA

|     |                                                                        |
| --- | ---------------------------------------------------------------------- |
| 1   | (Case called)                                                          |
| 2   | MR. MORELAND:  Christopher Moreland more Halunen on                    |
| 3   | behalf of the plaintiffs, your Honor.                                  |
| 4   | THE COURT:  You are?                                                   |
| 5   | MR. MORELAND:  Chris Moreland.  M-O-R-E-L-A-N-D.                       |
| 6   | THE COURT:  Okay.                                                      |
| 7   | MR. MARKS:  Good afternoon, your Honor.  Aaron Marks                   |
| 8   | from Kirkland & Ellis on behalf of the defendant Coach, and            |
| 9   | with me is Kevin Cyrulnik and Cynthia Jordano from my prior            |
| 10  | firm, Kasowitz Benson, also on behalf of Coach.                        |
| 11  | THE COURT:  You fled Kasowitz?  You left, you                          |
| 12  | departed.                                                              |
| 13  | MR. MARKS:  I departed.                                                |
| 14  | THE COURT:  So you are now at?                                         |
| 15  | MR. MARKS:  Kirkland & Ellis.                                          |
| 16  | THE COURT:  Kirkland, okay.  Please, be seated                         |
| 17  | everybody.                                                             |
| 18  | Mr. Marks, this is your motion.  What would you like                   |
| 19  | to tell me?                                                            |
| 20  | MR. MARKS:  Sure.  Thank you, your Honor.                              |
| 21  | If your Honor may recall, in your August 28, 2017                      |
| 22  | decision, you dismissed Marino's New Hampshire Consumer                |
| 23  | Protection Act claim, plaintiff's fraud claim under New York           |
| 24  | Law, and plaintiff's unjust enrichment claim on the basis that         |
| 25  | plaintiffs did not adequately plead a cognizable injury.  The          |

1  Court recognized that the original consolidated class action
2  complaint was devoid of allegations that address the how and
3  why of plaintiff's product confusion theory, but your Honor
4  gave the plaintiffs the opportunity to seek to amend their
5  complaint to adequately allege the how of the deception.
6          In our motion to dismiss which we filed after they
7  served their amended complaint, we maintain that plaintiffs are
8  still unable to satisfactorily plead that they believed that
9  they were purchasing an item that was of the same quality as
10 visually similar products sold in Coach retail stores.
11 Specifically, there are four plaintiffs here.  With two of them
12 it is very straightforward, Rael and Hinkey.  There are no new
13 allegations as to either of them so they can't possibly satisfy
14 the burden that your Honor laid out in your August 20th order.
15         THE COURT:  I think they are hanging their hat on
16 Esparza and Marino.
17         MR. MARKS:  Correct.  Correct.
18         Although the new amended complaint suggests that at
19 some point products sold by Coach at retail are identified in
20 the amended complaint as being similar to the wristlet bags
21 that were purchased by Marino and Esparza, their allegations
22 still fall short of pleading with particularity that they were
23 deceived.
24         THE COURT: Well, let me ask you this.  So, here is
25 what I understand their theory now to be.  They believe that

1    the hang tag price, the manufacturer's suggested retail price
2    is an indication of quality, that is, and the quality is
3    equivalent to retail quality.  That was their understanding
4    when they were buying at the outlet store, that they were
5    getting retail quality goods.  As to these particular wristlets
6    they say the quality in fact is not as good because there are
7    differences, that I think I can assume the plaintiffs intend to
8    say means the quality was different, that is the Coach labels
9    and the Coach tags were different, presumably less designy or
10   something -- I don't know -- and that therefore they bridge the
11   gap.  They thought they were getting, by virtue of the price
12   tag, they thought they were getting retail quality goods.  In
13   fact, they've got these two bags and when they compare them to
14   the retail quality goods they are not in fact of equivalent
15   quality.
16             MR. MARKS:  That's their allegation.
17             THE COURT:  That's their theory.
18             MR. MARKS:  So, there are two main problems with how
19   they tried to plead this.
20             First of all, they do not adequately plead that the
21   products that were at retail were in fact of a superior
22   quality.  They were supposed to do investigation pursuant to
23   Rule 9B which governs here, and while they have pulled screen
24   shots of products that were on a website through the Wayback
25   Machine app, while they say that the tags are shinier or that

1    the emblems are different, they have not alleged how that is
2    that that is an indication of these products not being of an
3    equally high quality, meaning that they in fact concede that
4    these are -- the one wristlet is a leather bag, the other is of
5    a signature fabric.  So, in our mind the investigation which is
6    required here has not been sufficient for them to identify,
7    with particularity, what the lack of quality is.  That's one
8    problem.
9             The other problem, which we see as perhaps even more
10   significant, is the way they plead this is that they went and
11   found these screen shots of these other products but the
12   amended complaint is devoid of any allegation suggesting that
13   Marino or Esparza were themselves in any way deceived, meaning
14   that --
15            THE COURT:  Well, I agree that they have not alleged,
16   which would be one way to allege these cases.  You know, I
17   thought when I wandered into the outlet store that I was
18   getting a real Poppy bag and imagine my surprise and
19   disappointment when I found out it was not because it actually
20   has a schlockier label.  Right?  That's one way to allege this.
21   But, why isn't it acceptable to do what they have done which is
22   to do it in two steps which is that I thought I was getting
23   retail quality goods.  I bought the Poppy bag, the Poppy bag is
24   not retail quality.  Not that I thought that I was buying a
25   retail quality but in fact it is of lower quality than the

i655marA

1  Poppy bag that is actually sold at the retail stores.
2              MR. MARKS:  What they haven't alleged is that they
3  were even aware --
4              THE COURT:  Right.
5              MR. MARKS:   -- that there was a retail bag that
6  looked similar.
7              THE COURT:  But they were aware that Coach sells
8  retail bags.
9              MR. MARKS:  They're aware that there is in fact a
10 retailer named Coach.
11             THE COURT:  Right.
12             MR. MARKS:  They don't allege that they have ever been
13 in a retail Coach store or ever looked at the website that was
14 there or was certainly not aware of this product.  And so, with
15 respect to the causes of action here that are being pled, which
16 is fraud and unjust enrichment, all of which you determined in
17 the August 28th order, fall under 9B.  The notion of them
18 believing that this was in fact a retail product and being
19 confused and being deceived, you can't have that unless there
20 was at least some initial thought that there was a retail
21 product that this was the same as, meaning that --
22             THE COURT:  Okay.
23             MR. MARKS:  Your Honor dealt with this also in the
24 Belcastro case which was the Burberry matter.
25             THE COURT:  Yes.  I was lucky enough to get two of

1  these.

2  MR. MARKS: Even the way your Honor framed the
3  instruction for the plaintiff there to try to reframe and
4  reallege his claim, you stated in your initial decision of
5  Belcastro and followed up on it, plaintiffs will have the
6  opportunity to amend an alleged injury based on price premium
7  theory that he overpaid or that the product he purchased was
8  different than what he expected. Plaintiff is forewarned,
9  however, that non-specific allegations that Burberry sells the
10 same shirt for less or that plaintiff was led by Burberry's
11 action to believe erroneously that he was purchasing a product
12 normally sold in regular Burberry retail stores without any
13 factual investigation and support are inadequate to state a
14 claim.

15 So, here there is no allegation that the plaintiff
16 believed that they were buying a retail product because there
17 is no comparison. Much like with the other two who can't point
18 to a retail product that they can be even confused by, Marino
19 and Esparza also can't point to a retail product, really,
20 because they don't allege that they ever considered the retail
21 products.

22 So, when you are having a claim for fraud, for
23 example, you can't satisfactorily plead fraud without pleading
24 that you are in fact deceived. And so here, where there is no
25 connection between the alleged injury and what Coach did

i655marA

1    because there was no contact pled with the actual retail end of
2    the business, they have not pled fraud.
3             So, that would deal with fraud, with unjust
4    enrichment, and the New Hampshire Consumer Protection Act
5    claim.  With respect to the express warranty claim --
6             THE COURT:  Don't bother with the express warranty.
7             MR. MARKS:  Thank you, your Honor.
8             THE COURT:  Okay.
9             Mr. Moreland?
10            MR. MORELAND:  Thank you, your Honor.
11            Just a housekeeping matter at the beginning.  With
12   respect to the focus on Plaintiffs Rael and Hinkey in their
13   purported failure to be able to identify specific comparator
14   products, I would note and remind the Court that with the
15   exception of Marino, all three of the other plaintiffs are in
16   fact California purchasers and so they fall under the auspices
17   of the Court's prior order.
18            THE COURT:  Yes.
19            MR. MORELAND:  I think it is a bit of a red herring to
20   focus on them, but be that as it may.
21            THE COURT:  To the extent that they asserted claims
22   under something other than California --
23            MR. MORELAND:  Correct.
24            THE COURT:  -- they seem to be abandoned.
25            MR. MORELAND:  Correct.  I just wanted to make sure

that that was clear where those folks were from.

So, but your Honor I think hit the nail on the head with respect to the claim of the MFSRP and what it is supposed to do. So, I would posit that the very existence of the MFSRP implies, the whole point of it is to imply that there are similar products out there in the Coach retail world that are of a similar variety, otherwise there would be no point to that product. So, these people are in fact alleging that by virtue of that, by virtue of the existence of the MFSRP, they are going in with the intention and understanding that they will be receiving a retail store quality product but in fact they do not, by virtue of the fact of the things that your Honor pointed out which is the, I guess, less fancy nature of the emblems, of the hang tags, the additional stitching which indicates that the product may be made from remnants, and those are specific allegations that are set forth in the amended complaint. They are cited in the brief and we can certainly talk about them here. Again, we have provided two specific examples with respect to Esparza and with respect to Marino with the bags.

THE COURT: They bought the bag so they saw what the label looked like. They weren't deceived about the quality of the label.

MR. MORELAND: They were able to see what they purchased, of course, and review that, but they were not aware.

i655marA

1    And this is where it gets into a distinction between the cases
2    that Coach has cited in their brief and the kind of
3    disappointed bargain hunter cases including Belcastro, Shaulis,
4    Mulder.  Those types of cases.
5         What the Court said in giving us leave to amend was
6    the problem here is that with your product theory here, you
7    have not identified products that are similar which we have now
8    done.  So, yes, they were able to look at the specific product
9    they bought but they don't know necessarily, as consumers, what
10   in fact the retail product is going to look like and how it is
11   going to be different.  They know when they see.
12        THE COURT:  How will they be defrauded?
13        MR. MORELAND:  Because the quality of the product is
14   in fact worse, and that is something within the express
15   knowledge of the defendants.  They know the manufacturing spec
16   and processes and procedures and materials that go into making
17   up their products.  So, to the extent that the plaintiffs did
18   not know that, that's not something that they can tell.  They
19   see what they bought but at the same time they are expecting a
20   quality product that relates to the retail product and that's
21   not what they're getting.  They are, in fact, different
22   materials, different products, and whether or not they've
23   ultimately been deceived I guess would be a question for a
24   reasonable fact finder and not for dismissal at 12(b)(6), I
25   would argue.

1           THE COURT:  Okay.
2           MR. MORELAND:  And I think with respect to the
3   argument that there has been discussion of when these products
4   were screenshotted and whether or not they were in existence at
5   the time of the purchases and whether or not the plaintiffs saw
6   them and relied on them and made purchases, I think an
7   interesting case is the Ninth Circuit, Davidson v. Kimberly
8   Clark which is reiterated last month that the question on a 9B
9   pleading argument is not necessarily when the individual
10  plaintiff became aware of the fact that the product was
11  deceptive, but just the fact that it is when all the other 9B
12  requirements have been met.  And in the Court's initial order I
13  think your Honor walked through the steps and the facets of
14  what we needed to prove and said each of them has been met with
15  the exception, of the "how," which your Honor then went on to
16  talk about comparisons of a family of products or individual
17  products that are similar to what the plaintiffs had purchased.
18          THE COURT:  Why don't you just go on eBay and buy one?
19          MR. MORELAND:  What's that?
20          THE COURT:  I said why don't you just go on eBay and
21  buy one.
22          MR. MORELAND:  I don't know.
23          THE COURT:  I mean, in terms of research if you had
24  the two bags, you could compare them.
25          MR. MORELAND:  Presumably --

1  THE COURT:  You don't want to invest any more money in
2  this case than you already have?
3  MR. MORELAND:  I guess the pithy -- not pithy, the
4  smart-mouthed answer would be I don't think it is required
5  under the law to meet our burden at this stage and, frankly, I
6  think it is kind of flipping the apple cart on its head to say
7  that it's the plaintiff's -- now, certainly there is a duty of
8  investigation and you don't want to be bringing frivolous
9  claims but at the same time there is a duty on behalf of Coach
10 not to mislead folks and I don't think anybody here, the focus
11 in this discussion and the focus of the briefing hasn't been,
12 and I know that they will say that their pricing scheme is not
13 deceptive, but I think that is very much an open question.
14     So, I think to ask questions about eBay and all those
15 kind of things, while interesting, is not a legal burden that
16 we have to meet to surpass the 12(b)(6) standard.
17     THE COURT:  Okay.
18     Mr. Marks?
19     MR. MARKS:  Your Honor, with respect to again these
20 claims that they have brought, again fraud, unjust enrichment,
21 and the New Hampshire claim, we have already determined they
22 are fraud-based claims and your Honor was very direct in your
23 prior order as to what is lacking with respect to each of them.
24 So, for example, with respect to the New Hampshire-based claim
25 and the August 28th order, consumers like Marino, viewing the

1    MFSRPs, may believe that they are purchasing an item that is of
2    the same or similar quality as visually similar products sold
3    in Coach retail stores.  They have not pled that they believed
4    that this was similar to a specific item in the Coach retail
5    store.
6             THE COURT:  Not to a specific item but that they
7    understood that manufacturers' suggested retail price to
8    indicate that the products that they were buying were retail
9    quality.  That's what paragraph 20 alleges.
10            MR. MARKS:  There are no allegations here that Marino
11   or Esparza believes that the wristlet that they purchased was
12   in fact a retail product.  With respect to the fraud claim, in
13   order to allege such an injury with particularity, plaintiff
14   must amend their complaint to allege to what retail goods they
15   confused the outlet-only products they purchased.  To have
16   fraud they have to be deceived.  They have to have relied and
17   what not.  So here, not even having seen the products, they
18   can't meet fraud.
19            And with unjust enrichment, there is no allegation
20   they didn't get the benefit of their bargain because, again,
21   they didn't go in thinking that -- they didn't go in saying I
22   want to get the Poppy bag or the Saffiano bag and that's not
23   what happened here.
24            THE COURT:  Right.
25            MR. MARKS:  So, we think all these claims fail.

1          THE COURT:  All right.  Thank you.

2          I am prepared to rule on Coach's motion to dismiss.
3   Because the parties are familiar with the facts and history of
4   these cases, I will summarize them only as necessary for
5   purposes of this ruling.

6          In Coach I, I granted defendant's motion to dismiss
7   plaintiff's claims for common law fraud, unjust enrichment,
8   breach of express warranty, and violations of the New Hampshire
9   Consumer Protection Act -- or the CPA.  I did so because
10  plaintiffs did not alleged any quality-based injury resulting
11  from their purchases of Coach outlet-only products.
12  Plaintiffs' theory is that Coach uses MFSRPs -- manufacturers'
13  suggested retail prices -- that are similar to retail goods in
14  order to lead shoppers at Coach factory stores to believe that
15  they are purchasing retail quality goods, when, in fact, the
16  products sold in Coach factory stores are allegedly inferior in
17  quality.  That's from Coach I, 264 F. Supp. 3d at 570.
18  Assuming that is an actionable theory of fraud, plaintiff's
19  prior complaint was inadequate because plaintiffs did not
20  identify any differences in quality between the outlet only
21  goods they purchased and similar Coach retail products.  In
22  short, the how and why of this fraud were inadequately alleged.

23         Allegations of a difference in quality are critical
24  because neither New York nor New Hampshire recognized an injury
25  based solely on deception itself.  The fact that plaintiff

believed they were getting a bargain is not a cognizable injury.  See Belcastro v. Burberry, 2017 Westlaw 5991782 at page 3; Shaulis v. Nordstrom, 865 F.3d 1 at page 11.  "A plaintiff's 'bear assertion' that a product is deficient in some way is 'conclusory and can be subjective.'" Shaulis, 865 F.3d at 12.

In the amended complaint, two of the plaintiffs have plausibly alleged a difference in quality between the outlet-only wristlets they purchased and similar Coach retail wristlets.  I pause here to say that plaintiffs have done so by the slimmest of margins and I am exceedingly skeptical that discovery will support this theory.  That said, plaintiffs Esparza and Marino have alleged an injury that is concrete, objective, and distinct from the fact that they were deceived.  Plaintiff Esparza alleged that she purchased a wristlet that is similar in appearance to a Poppy signature wristlet but inferior insofar as it is embossed with a different emblem and tag.  That's in the amended complaint at 47 and 48.  Marino alleges that the wristlet she purchased is similar in appearance to the Saffiano wristlet but inferior insofar as it has a slightly different Coach lettering and additional stitching.  That's in the amended complaint at 49 to 50.  These are narrow differences in quality and plaintiffs theory requires another logical step for Court to infer that the differences are indicative of lesser quality but it is a barely

1   reasonable inference.

2   　　　　In response, Coach argues that neither Esparza nor
3   Marino actually believed that they were purchasing wristlets
4   similar to the Poppy signature and Saffiano.  I agree.  The
5   amended complaint does not allege that either of these
6   plaintiffs, that either was aware at the time of their
7   purchases of visibly similar retail wristlets.  While in Coach
8   I the Court posited that would be a way in which a plaintiff
9   could allege a fraud cause of action, such an allegation is not
10  necessary to plaintiff's theory of the deception.  Plaintiffs
11  allege that they "believed that the MFSRPs were a
12  representation that their items were of a same or similar
13  quality as products sold in Coach's famous retail stores."  See
14  amended complaint at 20.  Their theory is not that they were
15  specifically deceived into purchasing look-alike Saffianos or
16  signatures.  The Court previously held that this theory of
17  deception is viable because a reasonable consumer might view
18  the MFSRPs as indicators of quality equivalent to the quality
19  of Coach retail goods.  Coach I at 264 F. Supp.3d 370.

20  　　　　I understand Coach's argument to be that allegations
21  that plaintiffs subjectively believed they were purchasing
22  look-alike Saffianos or Poppy signatures are necessary to state
23  an actual injury for purposes of New York or New Hampshire law.
24  The Court agrees that certainly would be one way to allege
25  actual injury.  "I thought I was getting a Poppy but instead I

got a bag that looked like a Poppy but objectively has a lower quality Coach emblem and tag." That is not plaintiff's theory, however. Plaintiffs allege not that they thought the particular bag purchased matched to specific goods sold in Coach retail stores but that they generally understood, because of the MFSRPs, that the goods sold in the outlet store were equivalent in quality to retail goods. They are injured, they allege, because the particular bags they purchased were of a lower quality than similar retail goods. The narrow differences between the outlet wristlets purchased by plaintiffs and the retail wristlets described in the amended complaint are, at this stage, sufficient objective differences in quality. The amended complaint does not allege a difference in quality that is vague or highly generalized as the prior complaint did and as the complaints in the similar Burberry action that was before me did.

     I find Coach's arguments with respect to plaintiff's express warranty claims to be more persuasive. In Coach I, I held that the MFSRPs are not an express warranty of quality. The amended complaint includes no additional allegations relative to this theory and plaintiffs now assert that the MFSRPs are an express warranty of worth or a former price. Representations of worth or perceived value of a seller are not actionable as express warranties. The cases cited by plaintiffs to support this theory involve far more specific

1   representation from experts such as art appraisers.
2   Additionally, the MFSRP -- or the manufacturers' suggested
3   retail price -- do not amount to a warranty of a former price.
4   A representation of a suggested price is different than a
5   representation of a former price.
6            Plaintiffs Rael and Hinkey did not substantively amend
7   their claims.  My impression is that they did not do so because
8   it is plaintiff's position that Esparza and Marino can
9   represent the entire universe of potential plaintiffs for
10  common law fraud, unjust enrichment, and violations of state
11  consumer protection statutes including members of the
12  nationwide class, multi-state class, and California subclass.
13  Accordingly, the motion to dismiss is granted in its entirety
14  as to Rael and Hinkey for the reasons stated in Coach I.
15           In sum, the motion to dismiss is denied as to Esparza
16  and Marino's claim for fraud, unjust enrichment, and violations
17  of the New York CPA, and granted as to plaintiff's claims for
18  breach of express warranty.  The motion to dismiss Rael's and
19  Hinkey's claims for fraud, unjust enrichment, express warranty,
20  and to the extent they asserted such claims for violations of
21  the state consumer protection statutes, is granted.  The motion
22  to dismiss did not address Counts One through Five so those
23  counts remain in the case.
24           By June 15th the parties must submit a joint letter
25  with a proposed case management plan for discovery.  The Clerk

1  of Court is directed to close the open motion at docket no. 74.
2            The next step is discovery but would the parties like
3  a referral to the magistrate judge for a settlement conference?
4            MR. MARKS:  Your Honor, on behalf of Coach --
5            THE COURT:  You have to think about it?
6            MR. MARKS:  Yes, I think we will think about it.  We
7  will let you know on the 15th.
8            THE COURT:  That's fine.
9            MR. MARKS:  Okay.
10           THE COURT:  Talk to each other.  If you want a
11 referral to the magistrate, I am happy to give you one.  I
12 don't know who your assigned magistrate judge is.
13           MR. MORELAND:  Very good.
14           THE COURT:  Anything further?  Anything further?
15           MR. MORELAND:  No.  Sorry, your Honor.
16           THE COURT:  Anything further?
17           MR. MARKS:  No, your Honor.
18           THE COURT:  Thank you very much.
19                                 o0o
20
21
22
23
24
25