# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE MARINO, DEBORAH ESPARZA, MONICA RAEL, and CERA HINKEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COACH, INC.,<br><br>Defendant. | Case No. 1:16-cv-01122-VEC (OTW) (Lead)<br><br>Consolidated Member Case Nos.:<br>1:16-cv-03773-VEC (OTW)<br>1:16-cv-03677-VEC (OTW)<br>1:16-cv-05320-VEC (OTW)<br><br>**DECLARATION OF STEVEN WEISBROT, ESQ. OF ANGEION GROUP, LLC** |

I, Steven Weisbrot, Esq., declare under penalty of perjury as follows:

1.      I am a partner at the class action notice and Settlement Administration firm, Angeion Group, LLC ("Angeion").  I am fully familiar with the facts contained herein based upon my personal knowledge.

2.      I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs including some of the largest and most complex notice plans in recent history.  I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice Programs, as well as Claims Administration, generally.  I am the author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

3.      I was certified as a professional in digital media sales by the Interactive Advertising Bureau

("IAB") and I am co-author of the Digital Media section of Duke Law's Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23.

4.      I have given public comment and written testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media and print publication, in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and suggest an educational curriculum for the judiciary concerning notice procedures.

5.      Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

6.      My notice work comprises a wide range of settlements that include product defect, mass disasters, false advertising, employment, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.  I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs.  For example, the Honorable Sarah Vance stated in her December 31, 2014 Order in *In Re: Pool Products Distribution Market Antitrust Litigation*, MDL No. 2328:

> To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice.  The Court welcomes the inclusion of web-based forms of communication in the plan….  The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process.
>
> The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement.

As detailed below, courts have repeatedly recognized my work in the design of class action notice programs:

(a)     On February 24, 2017, The Honorable Ronald B. Rubin in *James Roy et al. v. Titeflex Corporation et al.*, No. 384003V (Md. Cir. Ct.), noted when granting preliminary approval to the settlement:

> What is impressive to me about this settlement is in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make a decision. To me that is a key piece of this deal. ***I think the notice provisions are exquisite.*** (Emphasis added).

(b)     Likewise, on July 21, 2017, The Honorable John A. Ross in *In Re Ashley Madison Customer Data Security Breach Litigation*, MDL No. 2669 (E.D. Mo.), stated in the Court's Order granting preliminary approval of the settlement:

> The Court further finds that the method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Program, dated July 13, 2017, and the Parties' Stipulation—including an extensive and targeted publication campaign composed of both consumer magazine publications in People and Sports Illustrated, as well as serving 11,484,000 highly targeted digital banner ads to reach the prospective class members that will deliver approximately 75.3% reach with an average frequency of 3.04 —***is the best method of notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and all Constitutional requirements including those of due process***. (Emphasis added).
>
> The Court further finds that the Notice fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Notice, the Claim Form, and other exhibits to the Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy.

(c)     In the *In Re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, and Products Liability Litigation*, Case No. 17-md-02777-EMC (N.D. Cal.), in the Court's February 11, 2019 Order, the Honorable Edward M. Chen ruled:

[In addition] the Court finds that the language of the class notices (short and long-form) is appropriate and that the means of notice – which includes mail notice, electronic notice, publication notice, and social media "marketing" – is the "best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); see also Proc. Guidance for Class Action Sett. ¶¶ 3-5, 9 (addressing class notice, opt-outs, and objections). The Court notes that the means of notice has changed somewhat, as explained in the Supplemental Weisbrot Declaration filed on February 8, 2019, so that notice will be more targeted and effective. See generally Docket No. 525 (Supp. Weisbrot Decl.) (addressing, inter alia, press release to be distributed via national newswire service, digital and social media marketing designed to enhance notice, and "reminder" first-class mail notice when AEM becomes available).

(d)     On June 26, 2018, in his Order granting preliminary approval of the settlement in

*Mayhew v. KAS Direct, LLC, et al.*, Case No. 16-cv-6981 (VB) (S.D.N.Y.), The Honorable

Vincent J. Briccetti ruled:

In connection with their motion, plaintiffs provide the declaration of Steven Weisbrot, Esq., a principal at the firm Angeion Group, LLC, which will serve as the notice and settlement administrator in this case. (Doc. #101, Ex. F: Weisbrot Decl.) According to Mr. Weisbrot, he has been responsible for the design and implementation of hundreds of class action administration plans, has taught courses on class action claims administration, and has given testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, and digital media in due process notice. Mr. Weisbrot states that the internet banner advertisement campaign will be responsive to search terms relevant to "baby wipes, baby products, baby care products, detergents, sanitizers, baby lotion, [and] diapers," and will target users who are currently browsing or recently browsed categories "such as parenting, toddlers, baby care, [and] organic products." (Weisbrot Decl. ¶ 18). According to Mr. Weisbrot, the internet banner advertising campaign will reach seventy percent of the proposed class members at least three times each. (Id. ¶ 9). Accordingly, the Court approves of the manner of notice proposed by the parties as it is reasonable and the best practicable option for confirming the class members receive notice.

7.     By way of background, Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies.  Collectively, the management team

at Angeion has overseen more than 2,000 class action settlements and distributed over $10 billion to class members.  The executive profiles as well as the company overview are available at http://www.angeiongroup.com/our_team.htm.

8.      This declaration will describe the Notice Program that will be implemented in this matter, subject to this Court's approval, including the considerations that informed the development of the plan and why it will provide Due Process of Law to the members of the proposed Settlement Class.  In my professional opinion, the Notice Program described herein is the best practicable notice under the circumstances and fulfills all due process requirements.

### SUMMARY OF NOTICE PROGRAM

9.      The Notice Program is the best notice that is practicable under the circumstances, fully comports with due process and Fed. R. Civ. P. 23.  Specifically, the Notice Program provides for direct notice via email to all Settlement Class Members for whom the Defendant has email address information.  Further, for any Settlement Class Members for whom the Defendant does not have email address information, Angeion will effectuate reverse lookup searches to locate email addresses for those Settlement Class Members (discussed in greater detail below).  Direct notice via email will be sent to those Settlement Class Member email addresses located via the reverse searches.  Notice via email is an appropriate means of communication for this Settlement Class, as the Defendant maintains millions of email addresses for actual known Settlement Class Members.

10.     In addition to the direct notice campaign outlined above, the Notice Program includes a media notice plan consisting of state-of-the-art internet advertising coupled with print publication in both a national and California regional publication.  The Notice Program also includes an informational website and toll-free telephone line where individuals can learn more about their rights and responsibilities in the litigation.  In short, the Notice Program described herein is the best notice that is practicable under the circumstances and exceeds many notice campaigns approved in other, similar settlements.

## CLASS DEFINITION

11.     "Settlement Class" or "Settlement Class Member" means all persons identified in COACH's CRM database who, during the Class Period, purchased one or more items from COACH's Coach-branded outlet stores in the United States offered at a discount from a "MFSRP" and which contained an MFSRP price on the tag. Excluded from the Settlement Class and Settlement Class Members are:  (a) the directors, officers, employees, and attorneys of COACH, its parents and subsidiaries, and any other entity in which COACH has a controlling interest; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

## DIRECT NOTICE

12.     The direct notice effort in this matter will consist of emailing notice of the Settlement to each Settlement Class Member for whom COACH's CRM database contains a valid email address as well as sending email notice to any Settlement Class Member for whom an email address is obtained via the lookup process outlined below.  Regarding the email addresses that COACH will provide, I am advised that the vast majority of those email addresses were provided to Tapestry (or its predecessor, Coach Inc.) by known members of the potential Settlement Class, in accordance with each state's applicable laws.

13.     Angeion has been informed that Defendant's records contain email addresses for approximately 18,500,000 Settlement Class Members.  Further, Angeion has been informed that Defendant's records include an additional approximate 4,500,000 records that do not have email addresses, but contain name, mailing address and/or phone number information (*See* Declaration of Bradley Breuer, at ¶ 3). Angeion will cause two reverse lookup searches ("email appends") to be performed to locate email addresses for this population of approximately 4,500,000 Settlement

Class Members for whom Defendant does not have email address information.

**First Reverse Lookup Search**

14.     Angeion will cause a first reverse email address append to be performed to locate email addresses using the other contact information ("data points") provided by the Defendant (e.g. name, mailing address and/or phone number) for the approximately 4,500,000 Settlement Class Member records without email addresses. To accomplish this, the append search utilizes data garnered from commercially available first-party and third-party data providers to match those data points as a validity check to identify email addresses associated with the data points from the Class List.  Angeion will update the Class List with the Settlement Class Member email address information it obtains via this append process.

**Second Reverse Lookup Search**

15.     Angeion will cause a second reverse email append to be performed for any Settlement Class Member records for whom an email address was not located after the first append (described in the preceding paragraph).  To accomplish this, a different data partner[1] will be utilized which will increase the likelihood of garnering a verified email address for any Settlement Class Member that Angeion could not successfully append an email in the first instance.  Angeion will update the Class List with the Settlement Class Member email address information it obtains via this second append process.

**Email Notice**

16.     Angeion will cause direct notice to be sent via email to: (1) Settlement Class Members who have an email address in the records provided by the Defendant; and (2) Settlement Class Members whose email addresses have been obtained via the two append searches described in paragraphs 14 and 15 *supra*.

---

[1] Our data partners typically include Acxiom, Dun & Bradstreet, Google, Nielsen, Oracle, and Facebook.

17.     Below I have outlined some of Angeion's practices to increase deliverability and readability of email notice.  Specifically, Angeion will employ the following best practices regarding the email notice.

18.     Angeion designs the email notice to avoid common "red flags" that might otherwise cause the recipient's spam filter to block the email notice or identify it as spam.  For example, Angeion will not include the long form notice as an attachment to the email notice because attachments are often interpreted by various Internet Service Providers ("ISP") as spam.  Rather, in accordance with industry best practices, Angeion will include electronic links to all operative documents so that recipients can easily access this information.

19.     Angeion also accounts for the reality that some emails will inevitably be unsuccessful during the initial delivery attempt.  Therefore, after the initial email notice campaign is complete, Angeion, after an approximate 24-72-hour rest period, which allows any temporary block at the ISP level to expire, will direct a second round of email notice to any email addresses that were previously identified as "soft-bounces."  In Angeion's experience, this minimizes the number of emails that may have erroneously been blocked by sensitive servers.

## MEDIA NOTICE

20.     Above and beyond the direct notice campaign described above, the Notice Program contemplates a publication campaign comprised of internet banner notice advertising and print publication designed to provide further notice of the Settlement to Settlement Class Members.

### Internet Banner Notice

21.     The internet banner notice portion of the Notice Program will be implemented using a 4-week desktop and mobile campaign, utilizing standard IAB sizes (160x600, 300x250, 728x90, 300x600, 320x50 and 300x50).  The banner notice portion is designed to result in serving approximately 2,367,143 impressions and will further be designed to notify and drive Settlement

Class Members to the dedicated settlement website, where they can find more information about the Settlement and are able to submit a claim form.

22.     To track campaign success, we will implement conversion pixels throughout the settlement website to better understand audience behavior and identify those Settlement Class Members who are most likely to convert.  The programmatic algorithm will change based on success and failure to generate conversions throughout the process.  Successful conversion on the Claim Submission button will be the primary goal, driving optimizations.

**Print Publication**

23.     The Notice Program further includes print publication in two different newspapers.  First, we will publish in a national publication to provide notice of the Settlement on a national level. One 1/4-page black and white insertion will be published.  This ad will feature notice of the settlement and run one time.

24.     Further, in order to satisfy the notice requirements of the California Consumer Legal Remedies Act ("CLRA"), the Notice Program will utilize four 1/4-page black and white insertions in a California regional publication that meets the requirements of 6064 of the California Government Code. These ads will feature notice of the settlement and will run for four consecutive weeks.

**RESPONSE MECHANISMS**

25.     The Notice Program will implement the creation of a case-specific website, where Settlement Class Members can easily view general information about this class action, review relevant Court documents and view important dates and deadlines pertinent to the Settlement.  The website will be designed to be user-friendly and make it easy for Settlement Class Members to find information about the Settlement or to file a claim directly on the website.  The website will also have a "Contact Us" page whereby Settlement Class Members can send an email with any

additional questions to a dedicated email address.

26.     A toll-free hotline devoted to this case will be implemented to further apprise Settlement Class Members of the rights and options in the Settlement.  The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

## CLAIMS PROCESSING AND DISTRIBUTION OF SETTLEMENT BENEFITS

27.     Angeion will receive and process claim form submissions received via U.S. mail or electronically via the settlement website.  Angeion will review claim form submissions for completeness, including reviewing any supporting documentation submitted, and will report the total number of timely and approved claims, including the value and type of claim (*i.e.*, voucher or cash) to counsel for the parties.  Claim forms may be rejected for the reasons set forth in the Settlement Agreement.

28.      In addition to reviewing the claim form submissions for completeness, Angeion will review for duplicate claim submissions and utilize customary standards to prevent the payment of fraudulent claims.

29.     Upon the completion of the claims processing and review, Angeion will prepare a finalized distribution list, identifying the number and value of electronic payments and vouchers that will be issued for valid and timely claim form submissions.

30.     Angeion will issue electronic payments and vouchers to Claimants at the email address provided by the Claimants on the claim form submissions.

## CONCLUSION

31.     The Notice Program outlined above includes direct notice to all reasonably identifiable Settlement Class Members via electronic means and is estimated to reach the overwhelming

majority of the Settlement Class.  Further, the parties have implemented a sophisticated media notice program consisting of state-of-the-art digital banner ads and print publication to further diffuse news of the Settlement.

32.     In my opinion, the Notice Program will provide full and proper notice to the Settlement Class Members before the claims, opt-out, and objection deadlines.  Moreover, it is my opinion that the Notice Program is the best notice that is practicable under the circumstances, fully comports with due process, utilizes contemporary communication methods and comports with the mandates Fed. R. Civ. P. 23.  After the Notice Program is complete, Angeion will provide a final report verifying its effective implementation.


        I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: November 8, 2019

STEVEN WEISBROT