USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE MARINO, DEBORAH ESPARZA, MONICA RAEL, and CERA HINKEY, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>COACH, INC.<br><br>    Defendant. | CASE NO.:<br>1:16-cv-01122-VEC (OTW) (Lead)<br><br>Consolidated Member Case Nos.:<br>1:16-cv-03773-VEC (OTW)<br>1:16-cv-03677-VEC (OTW)<br>1:16-cv-05320-VEC (OTW) |

**FINAL APPROVAL ORDER**

The Parties to the above-captioned action currently pending against Defendant COACH, Inc.,[1] have agreed to a settlement, the terms and conditions of which are set forth in an executed Settlement Agreement (the "Settlement Agreement").[2] The Settlement Agreement was reached through arm's-length negotiations by the Parties and their counsel with the assistance, and under the supervision, of Honorable Magistrate Judge Ona T. Wang. Under the Settlement Agreement, subject to the terms and conditions therein, and subject to Court approval, Plaintiffs and the proposed Settlement Class would fully, finally, and forever resolve, discharge, and release their claims in exchange for monetary relief, including direct relief of $4,661,000 in cash and vouchers (not including Defendant's payment of Attorneys' Fees and Expenses and Incentive Awards to Plaintiffs) and injunctive relief, including compliance with federal and state laws related to pricing and advertising.

---

[1]   COACH, Inc., is now known as Tapestry, Inc.

[2]   All capitalized terms used herein have the same meanings as those used in the Settlement Agreement.

On August 24, 2020, this Court granted Plaintiffs' Amended Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan before the Court, preliminarily approving the Settlement Agreement, appointing as Settlement Class Counsel David Cialkowski of Zimmerman Reed LLP, Todd Carpenter of Carlson Lynch LLP, Jeff Ostrow of Kopelowitz Ostrow, P.A., Andrea Gold of Tycko & Zavareei LLP, and Charles Moore of Halunen Law ("Settlement Class Counsel"), appointing Michelle Marino, Deborah Esparza, Monica Rael, and Cera Hinkey as Settlement Class Representatives, establishing deadlines for Settlement Class Members to file objections or request exclusion from the Settlement, appointing Angeion Group, LLC, as Settlement Administrator, and ordering effectuation of the Notice Plan. (Dkt. No. 137)

On February 23, 2021, the Court held a Final Approval Hearing to which all Class Members were invited. One putative class member objected to the Settlement, but his objection was later withdrawn. *See* Dkts. 139; 149. As of January 11, 2021, the Settlement Administrator received 14 timely opt-outs from the Settlement. Settlement Class Counsel and Counsel for Defendant appeared at the Final Approval hearing.

The Court, having reviewed the materials submitted in connection with the Settlement and being fully advised and having afforded Class Members an opportunity to object, hereby finds that the Class Settlement is fair and reasonable under Rule 23 of the Federal Rules of Civil Procedure, the Class Notice sent to Class Members satisfies the requirements of Rule 23 and due process, and the Parties have fully complied with the Preliminary Approval Order.

The Court finds that the Notice given provided the best notice practicable under the circumstances and was reasonably calculated to communicate actual notice of the litigation and the proposed settlement to members of the Settlement Class. The Court further finds that

Defendant provided timely and sufficient notice of the proposed settlement to appropriate federal and state officials under the Class Action Fairness Act of 2005, 17 U.S.C. § 1715. Under these circumstances, it is fair and reasonable to make the Settlement Agreement and its release of claims binding on all Class Members, whether or not they actually received notice of this action and the proposed Settlement. The Court finds that the Settlement and the Court's granting of the Final Approval Order and Judgment of Dismissal is binding on all Settlement Class Members, whether or not they received actual notice of the Settlement, the Final Approval Order, or the Judgment of Dismissal.

The Court finds the Settlement Agreement to be fair and made in good faith. Further, the Court finds that there has been no collusion between the parties in reaching the Settlement Agreement.

The Court hereby finds that the Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class. The Court approves the Settlement Agreement submitted by the Parties and orders the Parties to perform their obligations pursuant to the Settlement Agreement.

The Court finds that for purposes of the Settlement, the requirements for certification of a Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure are satisfied. The Court finds that (i) the Class is so numerous that joinder of all members is impracticable; (ii) there are questions of fact or law common to the class; (iii) such common questions predominate over questions affecting only individual members; (iv) the claims of the Class Representative are typical of the claims of the Class; (v) the proposed representative will fairly and adequately protect the interests of the Class; and (vi) a class action is a superior method for the fair and efficient adjudication of the controversy.

The Settlement Class is defined in the Settlement Agreement as all persons who, during the Class Period, purchased one or more items from COACH's Coach-branded outlet stores in the United States offered at a discount from a "MFSRP" and which contained a "MFSRP" on the tag, and is adjudged a final and permanent class for purposes of this Action, as well as for the Final Approval Order and Judgment of Dismissal.

Settlement Class Counsel seeks an award of $1,175,000 in attorneys' fees and expenses. Counsel represents the request to reflect a discount of approximately 25% from their lodestar and to reflect a recovery of 25% of the value of the Settlement Fund. Settlement Class Counsel is awarded fees in the amount of $685,250 and $28,219.74 in expenses (or a total of $713,469.74) as reasonable compensation for Plaintiffs' counsel's work.

In class action settlements involving both cash and vouchers, when calculating the value of the Settlement Fund for the purpose of determining Attorneys' Fees, courts value the settlement as the total of the common cash fund and the value of vouchers that are likely to be redeemed.[3] *See Rodriguez v. It's Just Lunch Int'l*, No. 07-CV-9227, 2020 WL 1030983, at *10 (S.D.N.Y. Mar. 2, 2020) (valuing the settlement as the amount of the cash fund without including the nominal voucher amount given the low likelihood that vouchers would be redeemed); *Parker v. Time Warner Ent. Co.*, 631 F. Supp. 2d 242, 264–70 (E.D.N.Y. 2009) (conducting its own analysis of the settlement value by taking into consideration the characteristics and incentives facing class members).

---

[3] The Class Action Fairness Act ("CAFA") requires that the portion of any attorneys' fee that is attributable to the award of coupons must be based on the value of the coupons that are redeemed. 28 U.S.C. § 1712(a). But that provision does not apply to this Settlement because Coach has agreed to pay attorneys' fees separate from and in addition to the settlement fund. *See* 28 U.S.C. § 1712(b) ("If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action."); *see also Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012).

The Court disagrees with Settlement Class Counsel that the vouchers should be valued dollar-for-dollar like cash. It is highly unlikely that all of the vouchers will be redeemed before they expire one year after distribution. Precedent cited by Settlement Class Counsel to support their argument that the vouchers are the equivalent of cash are inapposite because the settlements at issue in those cases involve gift cards at budget-priced retailers and are much more likely to be redeemed than vouchers of modest amount at a luxury-goods outlet store. *See* Fees Mem. of Law at 9 (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950–51 (9th Cir. 2015) (involving Walmart gift cards); *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 255–56 (E.D. Pa. 2011) (involving Rite Aid gift cards)).

For the purpose of Attorneys' Fees only, the Court finds that the likely value of the Settlement is $2,741,000. This includes $500,000 in cash payments, $321,000 in notice and settlement administration costs, and $1,920,000 in vouchers. The total face value of distributed vouchers is approximately $3,840,000. For purposes of determining reasonable attorneys' fees, the Court has discounted the value of the vouchers by 50%, to $1,920,000. The Court finds a 50% discount to be a reasonable adjustment for the value of a voucher that can be used only at a Coach outlet store and will expire, if not used, in a year, as compared to cash, which has no expiration date so long as the check is cashed, and can be used anywhere for any purchase. The Settlement Agreement offered Class Members a choice of either vouchers or cash in the amount of 25% of the vouchers, demonstrating that the parties themselves recognize that the vouchers are worth considerably less than cash. *See* Settlement Agreement ¶ 4.2(e)(1) (offering $20 in vouchers or $5 in cash for those in Tier 1); *id.* ¶ 4.2(e)(1) (offering $40 in vouchers or $10 in cash for those in Tier 2). *See also Parker*, 631 F. Supp. 2d at 268 (using the cash offer as a baseline to assess the value of the service benefit). Following Settlement Class Counsel's

5

presentation at the Final Approval Hearing, the Court adjusted upward the value of the vouchers to 50% of their listed value in recognition that, given the relatively low claim rate, recipients of vouchers will receive either $80.74 or $161.48 in vouchers. *See* Shawver Decl., Dkt. 152 ¶ 9. Given the more-than-nominal value of the vouchers (even compared to the cost of goods at Coach Outlet Stores), for purposes of evaluating their request for attorneys' fees, the Court is prepared to give Plaintiffs' counsel the benefit of the doubt and to conclude that approximately half the vouchers will actually be used.

The Court agrees with Settlement Class Counsel that 25% of the fund is fair and reasonable compensation under the percentage method. *See* Fees Mem. of Law at 5. Twenty-five percent of $2,741,000 is $685,250, the amount the Court approves in Attorneys' Fees.

When using the percentage method, courts cross-check the reasonableness of the fee by applying the lodestar method. *See Goldberg v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).[4] Settlement Class Counsel assert an eye-popping lodestar of $1,603,003.50 for about 2,900 hours of work.[5] Fees Mem. of Law at 14. This case proceeded through two motions to dismiss, no formal discovery, and settlement discussions.

---

[4] The Court has considered all of the factors established in *Goldberg v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000), in determining that the requested fee is not reasonable. As discussed in text, the Court questions whether the reported lodestar is bloated or reflects duplicative work (no fewer than seven law firms worked on this matter). Moreover, although this case would have been complicated had it proceeded to discovery and class certification, it settled early in the process when it was not particularly complex. Litigation risks were substantial, class counsel took the case on a contingency basis, and public policy weighs in favor of adequate compensation for the attorneys. The quality of representation could have been higher. In addition to the shortcomings in their fee application, counsel initially presented for approval a settlement in which the definition of the class was inconsistent across documents: most of the proposed preliminary approval documents defined the class as those persons identified in Coach's CRM database (the CRM database was not defined or explained in the papers submitted in support of preliminary approval of the settlement), while the longform notice defined the settlement class more broadly as anyone who made a requisite purchase during the settlement class period. *See* Order, Dkt. 123 at 2 (detailing these discrepancies and other issues with the proposed preliminary approval documents).

[5] In contrast, in *Morrow v. Ascena Retail Grp.*, No. 16-CV-3340 (JPO) (S.D.N.Y), a similar lawsuit challenging pricing protocols in Ann Taylor outlet stores which proceeded down a roughly equivalent litigation path, the Plaintiffs' attorneys asserted that they had devoted a total of 2,284.5 hours to the litigation with a lodestar of $870,801. *See* Fees Mem. of Law, 16-CV-3340, Dkt. 73 at 9. Although there was only one litigated motion to dismiss in *Morrow* and the settlement negotiations in this action appear to have taken longer than they did in

The Court finds the reported lodestar to be of limited value. Settlement Class Counsel did not provide the aggregate lodestar information in a cogent or logical way,[6] and they provided two different total amounts, undermining the credibility of the number. *Compare* Fees Mem. of Law at 12 ($1,476,867.25) *with id.* at 14 ($1,603,003.50). Settlement Class Counsel failed to provide itemized breakdowns by task for several of the law firms,[7] and they failed to justify the large number of partner hours spent as an overall percentage of the claimed hours.[8] Further, given that many of the law firms represented that they have brought several similar class action lawsuits, Settlement Class Counsel failed to explain why so many hours, especially at the partner level, were needed to defend the action at the motion to dismiss stage of the proceedings. Accordingly, the Court finds that the lodestar is likely bloated by either unnecessary, inefficient, or duplicative work. Using $2,741,000 as the total value of the settlement, 25% of the settlement

---

*Morrow*, those differences do not adequately explain the fact that Plaintiffs' counsel assert they worked 616 more hours on this litigation than the *Morrow* lawyers worked in *Morrow* and their purported lodestar is almost double the *Morrow* lodestar.

[6]   The parties did not aggregate the information provided by the seven law firms in a cogent manner. For example, the declaration summarizing the lodestar calculations for each of the seven firms provides different information than that provided in the individual supporting declarations. *Compare* Cialkowski Decl., Dkt.147-1 ¶ 21 (citing $120,431.25 for 187.25 hours worked) *with* LaDuca Decl., Dkt. 147-6 at 4 (citing $120,956.25 for 188 hours worked); *compare* Cialkowski Decl. ¶ 16 (asserting that the law firm Carlson Lynch devoted 1,437.25 hours to this case) *with* Carpenter Decl. ¶ 6 (asserting that Carlson Lynch devoted 638.3 hours to the case, a difference of 798.95 hours).

[7]   None of the attorneys provided detailed, task-based itemized statements of their attorneys' fees and only two firms even presented summaries of the hours worked by task. *See* Carpenter Decl., Dkt. 147-2 at 3–4; Lambert Decl., Dkt. 147-7 at 3. The Court recognizes that judges have different preferences with respect to the materials provided to justify the purported lodestar. But even with those differences in mind, the lack of uniformity in the level of detail provided by the seven law firms demonstrates unacceptable sloppiness.

[8]   Given the early stage of litigation in which this case settled, the parties failed explain why it was appropriate for such a large percentage of the work to have been done by partners with much higher hourly rates. *See e.g.*, Cialkowski Decl. ¶ 12 (asserting that 838 of the 1,437.25 hours worked, or 58%, were attributed to partners charging a rate of $735 an hour). The large number of partner hours appears to account for the astronomical difference in the lodestar in this matter in contrast to the lodestar in *Morrow* discussed above. In *Morrow*, class counsel asserted a lodestar of $870,801 for 2,284 hours worked; in this matter, counsel assert a lodestar of almost double, $1,603,003.50, despite claiming to have worked only 25% more hours than the *Morrow* attorneys.

amount is $685,250, or approximately 43% of the reported lodestar.[9] Given the limited amount of litigation that occurred in this case, even recognizing that counsel took the case on a contingency basis, that is reasonable compensation for counsel's work on this matter.

In addition to any claim they make as Settlement Class Members, a payment in the amount of $2,000 to each of the named Plaintiffs, Michelle Marino, Deborah Esparza, Monica Rael, and Cera Hinkey, for a total of $8,000, in recognition of their services as Class Representatives, is approved as fair and reasonable.

Defendants shall pay the Attorneys' Fees, Expenses, and Service Awards to the Named Plaintiffs separately from the Settlement Fund, and no other Attorneys' Fees, costs, or expenses shall be paid by Defendant.

All Class Members are bound by this Final Approval Order and the Judgment of Dismissal. They are further bound by the terms of the Settlement Agreement, including, but not limited to, its Release provisions, as described in Section VII of the Settlement Agreement.

The Court hereby approves "Feeding America" as the *cy pres* recipient. Any cash and the cash equivalent of vouchers remaining in the Settlement Fund after distribution that, due to rounding, cannot be distributed pro rata among claimants must be donated to this organization. *See* Shawver Decl., Dkt. 152 at ¶ 15. Any cash remaining from uncashed checks must also be paid to this organization. *See* Settlement Agreement ¶ 4.5(c).

Plaintiffs and all Settlement Class Members (as defined in the Settlement Agreement) hereby release Defendant, and all Coach Released Persons & Entities, from all Released Claims, as defined in paragraph 2.25 of the Settlement Agreement.

---

[9] As noted in this Order at the top of page 7, *supra*, it is not entirely clear what, exactly, Plaintiffs are claiming was the lodestar.

A Judgment of Dismissal shall be entered herewith and shall dismiss this Action with prejudice and without costs (other than what has been provided for in the Settlement Agreement). By this Judgment of Dismissal, the Court dismisses the claims of Plaintiffs and the Settlement Class Members against Defendant and the Coach Released Persons & Entities with prejudice and without costs.

Notice of entry of this Order and the ensuing Judgment of Dismissal has been given to Settlement Class Counsel on behalf of the Settlement Class. It shall not be necessary to send notice of entry of this Final Approval Order or ensuing Judgment of Dismissal to individual members of the Settlement Class.

Plaintiffs and all Settlement Class Members are permanently enjoined and barred from commencing, prosecuting, or continuing any action asserting any of the Released Claims, as described in paragraph 2.25 and Section VII of the Settlement Agreement, against Defendant or any Coach Released Persons & Entities, either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located. Any person or entity who knowingly violates such injunction shall pay the costs and attorneys' fees incurred by Defendant, Plaintiffs, and/or other Coach Released Persons & Entities as a result of the violation.

After entry of the Judgment of Dismissal, the Court shall retain jurisdiction over the construction, interpretation, implementation, and enforcement of the Settlement Agreement and to supervise and adjudicate any disputes arising from the disbursement of Settlement Benefits.

In the event that (i) the Settlement Agreement is terminated pursuant to its terms; or (ii) the Settlement Agreement, Preliminary Approval Order, Final Approval Order, or Judgment of Dismissal are reversed, vacated, or modified in any material respect by this or any other court,

then (a) all orders entered pursuant to the Settlement Agreement shall be vacated, including this Final Approval Order; (b) the instant action shall proceed as though a Settlement Agreement had never been reached; and (c) no reference to the prior Settlement Agreement, or any documents related thereto, shall be made for any purpose; provided, however, that if the Parties to the Settlement Agreement agree to appeal an adverse ruling jointly and the Settlement Agreement, Final Approval Order, and Judgment of Dismissal are upheld on appeal in all material respects, then the Settlement Agreement, Final Approval Order, and Judgment of Dismissal shall be given full force and effect. In the event of (i) or (ii) above, all parties reserve all of their rights existing prior to the execution of the Settlement Agreement, and the doctrines of res judicata and collateral estoppel shall not be applied.

Neither the Settlement Agreement, this Order, nor any of their provisions, nor any of the documents (including, but not limited to, drafts of the Settlement Agreement, the Preliminary Approval Order, the Final Approval Order, and the Judgment of Dismissal), negotiations, or proceedings relating in any way to the Settlement, shall be construed as or deemed to be evidence of an admission or concession of any kind of any person, and shall not be offered or received in evidence, or subject to discovery, in this or any other action or proceeding except in an action brought to enforce its terms or except as may be required by law or court order.

This case is hereby dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate all open motions and close this case.

**SO ORDERED.**

**Date: March 3, 2021**
**New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**